LAURA A. ROYAL, Appellant, v. CITY OF DES MOINES, Appellee.

**MUNICIPAL CORPORATIONS:  Public Improvements—Notice of**
1  **Bids—"Extent of Work" and "Manner of Payment."**  The statutory requirement (Sec. 813, Code Suppl. Supp., 1915) that a notice for bids for street improvements shall give the "extent of the work," does not, in the grading of a street, require a statement of the *length of haul;* nor is such notice invalidated because it carries a technically inaccurate statement as to how the contractor is to be paid.

**MUNICIPAL CORPORATIONS:** Public Improvements—Assessing
2   **Costs of Grading.** The power to establish, open, and *"improve"* a street (Sec. 751, Code Suppl. Supp., 1915) and to assess the cost thereof on abutting and adjacent property embraces the power · to so grade the street after it is established that, by cuts and fills, the street will be brought to the established grade, and to assess such costs of grading to abutting and adjacent property, notwithstanding Sec. 792, Code Supp., 1913, which limits the assessment of grading to the cost of removing the dirt which lies between the established grade and the subgrade.

**MUNICIPAL CORPORATIONS:** Public Improvements—District Assessments. The statutory requirement (Sec. 792-g, Code Suppl. Supp., 1915) that assessments for street improvements shall include one half of the privately owned property between the street improved and the next street has no application to assessments within duly established assessment *districts.*

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

APRIL 5, 1921.

OPINION ON REHEARING JANUARY 16, 1923.

THIS was an appeal to the district court from the action of the city council, levying an assessment for improvements on West Forty-seventh Street in defendant city. Plaintiff had filed her objections to the proposed assessment by the council, which assessment was thereafter duly levied. The property involved was Lots 32 to 36, inclusive, of Waveland Place. The appeal to the district court was tried in equity. After hearing, the trial court ordered that the assessment against Lots 33, 34, and 36 should stand as originally made by the council; that the assessment against Lot 32 should be reduced from $520.05 to $450; and that the assessment against Lot 35 should be reduced from $441.96 to $325. Plaintiff appeals.—*Affirmed.*

*Royal & Royal, Parrish, Cohen & Guthrie,* and *George Harnagel,* for appellant.

*Miller, Griffiths, Weaver & Jordan,*. for appellee.

PRESTON, C. J.—The property of plaintiff was unimproved

acreage, and about 612 feet long and 278 feet wide.  Forty-seventh Street, upon which plaintiff's lots abut, is not paved.  Forty-eighth Street is west of these lots.  Lots 32, 33, and 34 run north and south, and Lots 35 and 36, east and west.  A part of the east side of 32 and the east end of 35 and 36 were taken in opening Forty-seventh Street, which still leaves Lot 32 about 100 feet wide, and 370 feet long, north and south, and Lots 35 and 36 about 200 feet long, east and west.  A part of the plat covering these properties is here set out.

Though these lots were somewhat rough, the evidence shows that property in this vicinity, and of this particular character, had increased in value considerably for a year or two before the assessment was made, and more thereafter. The assessment roll showed that each of the lots was assessed at the actual valuation of $720, but the evidence of all the witnesses is that they were worth more than this prima-facie value. Plaintiff's husband and agent estimated the value of Lot 32 at $800; Lot 33, $800; Lot 34, $1,200 to $1,300; Lot 35, $700; Lot 36, $900 to $1,000. Her witness Wells, a real estate man, who perhaps was not so well posted as to sales and values in that neighborhood, gave the values of the same lots, respectively, at $950, $850, $1,500, $700, and $900 to $1,000. Defendant's witness, a real estate man, disinterested, gave the values of the same lots, respectively, at $3,000, $2,500, $4,000, $3,000, $3,200. The assessment originally made by the council of what remained of Lot 32 was $520.05; Lot 33, $89.65; Lot 34, $44.83; and the assessment of the remainder of Lots 35 and 36 was made at $441.96 each. This original assessment was reduced by the district court on Lots 32 and 35, as before stated. A strip 22½ feet wide along the east side of plaintiff's lots, with parts of lots south of hers, was condemned under the resolution hereinafter referred to, and the condemnation jury fixed the value on the part taken of plaintiff's lots at $525, which has been paid to plaintiff. The issues raised by the written objections to the assessment and in the petition on appeal to the district court were somewhat complicated and numerous, but are summarized as follows: Whether the council complied with the provisions of the statute in regard to preliminary resolutions, notices, and advertisements for bids in connection with the work to be done; second, whether the expense of grading the street could be added to the cost of opening and extending the street, and the cost of grading be assessed against the property; third, whether the cost of said improvement could be legally assessed against that part of plaintiff's property which was more than half way from the improved street to the next street; fourth, whether the assessment was made according to benefits, and not in excess thereof, and whether in excess of 25 per cent of the actual value of the lots at the time of the assessment.

1. The first and second propositions before stated are so related in the record as that they may, for convenience, and to avoid repetition, be considered together. Appellant contends, and cites authority to the proposition, that, in making assessments, the assessing authority must strictly conform to the statutes, or at least that there must be a substantial compliance therewith. It is thought by appellant that Section 810 of the Supplemental Supplement, 1915, was not complied with. The part of the section relied upon by appellant provides that:

"When the council * * * shall deem it advisable or necessary to make or reconstruct any street improvement or sewer authorized in this chapter, it shall, in a proposed resolution, declare such necessity or advisability, stating the one or more kinds of material to be used, and method of construction," etc.

The complaint is that the resolution does not declare the necessity or advisability of grading Forty-seventh Street, and they say that neither the resolution nor the published notice of the same would give the property owner notice that the city deemed it necessary to grade, and so on. It seems to us that appellant misapprehends the record, and that the resolution does cover the objection made. It appears that there was a proposed resolution for opening and extending Forty-seventh Street, to which objections were filed, and another proposed resolution of necessity therefor was presented and adopted, which is as follows:

"Proposed resolution of necessity and resolutions opening and extending Forty-seventh Street from the south line of Forest Avenue to the north line of University Avenue, and a resolution designating and determining the benefited district against which the cost and expense of opening and extending said street, including the cost and expense of purchasing, through condemnation proceedings, the ground necessary for said opening and extending, shall be assessed.

"Be it resolved by the city council of the city of Des Moines: That it is deemed advisable and necessary to open and extend Forty-seventh Street from the south line of Forest Avenue to the north line of University Avenue, and the following tracts of ground are hereby designated as a street and dedicated to the public for street purposes, to wit: The east 22.5

feet of Lots 9, 10, 11, 12, 32, 35, 36, of the official plat of Waveland Place, an addition within and forming a part of the city of Des Moines, Polk County, Iowa, and other property.

"Be it further resolved: That the cost and expense to the city, by way of damages, if any, to abutting property because of said opening and extending, including the cost and expense to the city in acquiring the tract of ground hereinabove designated as a street, and dedicated to the public for street purposes, and grading the same to conform to Forty-seventh Street, already established, be apportioned to and assessed in proportion to benefits on all lots and parcels of land according to area abutting thereon, and including all adjacent property privately owned, and described as follows: Lots 7 to 12, inclusive, and Lots 23 to 36, inclusive, Waveland Place, and Lots 1 to 7 of the official plat of Lot 13, Waveland Place, an addition within and forming a part of the city of Des Moines, Polk County, Iowa [and other property not under consideration] ; said assessment to be in proportion to the special benefits conferred on the property hereinabove described, and not in excess of such benefit.

"Be it further resolved: That the territory just above described be, and the same is hereby designated and determined by the council to be, the district benefited by the improvement hereinabove provided for.

"Be it further resolved: That the city council will meet at 9 o'clock A. M., on the 26th day of October, 1917, at the council chamber at the city hall, for the purpose of considering said objections to said proposed resolution of necessity providing for the opening and extending of Forty-seventh Street hereinabove referred to, and the resolution of the council in fixing and determining the benefited district and assessing the cost and expense to said district; and that notice of such proposed resolution be published, as provided by law.

"Be it further resolved: That the legal department be and it is hereby directed to immediately, upon final passage of this resolution, proceed to secure, by condemnation proceedings or otherwise, the ground included within the territory above described, necessary for the opening and extending of Forty-seventh Street; and when title for said ground is thus procured,

the same be dedicated to the public as a part of Forty-seventh Street, and for street purposes.

"Passed October 1, 1917.   Approved October 1, 1917.
                    "John McVicar, Mayor.
"Attest:  Frank Jeffries, City Clerk.
"Published in Daily Capital October 2 and 3, 1917."

It is next objected that the notice for bids did not comply with Section 813 of the Supplemental Supplement, 1915.   It is as follows:

"Proposals for Grading Forty-Seventh Street from
           University Avenue to Forest Avenue.

"No. 573.   Sealed proposals will be received by the city council of the city of Des Moines at the office of the city clerk until 9:00 o'clock A. M. on the 27th day of May, 1918, for the following improvements, as per specifications now on file in the office of the superintendent of the departments of streets and public improvements.   Grading Forty-seventh Street from the north line of University Avenue to the south line of Forest Avenue the full width of the street.   The amount of excavation is estimated at 7,956 cubic yards, more or less. Work to begin on or before the 1st day of June, 1918, and to be completed on or before the 1st day of July, 1918.   The cost of constructing said improvements to be assessed against all lots and parcels of land abutting thereon and adjacent thereto, in accordance with the law governing same.   Payment for said work to be made in assessment certificates or bonds.   Proposals received will be acted upon by the city council on the 27th day of May, 1918.   Each bid must be accompanied with a certified check, inclosed in a separate envelope, and drawn on some known responsible bank in the city of Des Moines, and made payable to the order of the treasurer of the city of Des Moines, in the sum of $200.00.

                    "Tom Fairweather, Mayor.
"Attest:  Frank Jeffries, City Clerk.
"Published in the Evening Tribune May 16 and 17, 1918."

2.   That part of Section 813 relied upon provides that the

1. MUNICIPAL CORPORATIONS: public improvements: notice of bids: "extent of work" and "manner of payment."

notice "shall state as nearly as practicable the extent of the
work and the one or more kinds of material for which bids will
be received, when the work shall be done, the terms of payment
fixed, and the time the proposals shall be acted upon." Some
of these provisions—for instance, as to the kinds of material—
would refer to an improvement other than that contemplated in
this case, such as paving, and so on.

It is argued first that the notice does not state the extent of
the work, in that it does not state the extent of the haul necessary
in removing surplus dirt or making a fill. It will be observed
that the notice does state the amount of excavation estimated,
and in the assessment, the same number of cubic yards stated
for grading was charged for and assessed. Thus the extent of
the work is given. True, the matter of hauling would be one of
the details, as contended by appellant. In *Nixon v. City of
Burlington*, 141 Iowa 316, 323, we held that it was not necessary
that the notice state all the details, and that its office is to ap-
prise the public and persons interested of its general character,
and to give opportunity for investigation and protest to those
desiring to make it.

3. The next objection is that the notice for bids does not
fix the terms of payment, as required by Section 813. Section
751, Code Supplemental Supplement, 1915, provides that the
expenses of an extension and improvement such as this may be
paid from the general fund, or from highway or poll taxes, or
partly from each of such funds, or by assessing all or any por-
tion of the cost thereof on abutting and adjacent property, and
so on. The published notice recites that the cost is to be assessed
against the lots abutting thereon and adjacent thereto, in ac-
cordance with the law governing the same, and that the pay-
ment is to be made in assessment certificates or bonds. The
time is fixed when the proposals will be acted upon. Possibly
the notice could have been more specific, in stating that as to
the contractor the payments should be made in assessment cer-
tificates or bonds; but this is a matter that would, perhaps, con-
cern the contractor more than the abutting property owners.
As to the owners, the cost of the improvement was to be as-
sessed against their property. It is further argued that the
statute nowhere names assessment certificates, so that that term

has no definite legal statutory meaning. It is conceded, however, that Section 841 of the Code authorizes the city to issue street improvement certificates in payment for special assessments. No one could have been misled; and we think that this deviation is not such as to invalidate the assessment; and we are of opinion, too, that there was, in the matters complained of, a substantial compliance with the statute.

4. The value of the property is entirely a matter of opinion. It is somewhere between the highest values fixed by defendant and the lowest fixed by plaintiff. If the estimates given by plaintiff's witnesses are taken as a verity, then the assessments should have been further reduced. If defendant's estimates are taken, 25 per cent of the value, the amount which could not be exceeded in making the assessment, would be considerably more than the amount assessed. Exactness cannot be expected, but only a fair approximation. Without discussing the evidence of value further, we are satisfied with the conclusions of the trial court on this point, and hold that the assessments were not excessive.

5. The opinion in regard to all matters heretofore set out is the same as the original, with which we are content. On the original submission, the argument for appellant on the matters hereinafter referred to was brief, and the opinion was so; and it was held that Section 751, Supplemental Supplement, 1915, rather than Section 792-g, was controlling,—appellee contending that 751 was applicable, while appellant contended that the proceedings were under Section 792.

2. MUNICIPAL CORPORATIONS: public improvements: assessing costs of grading.

In the petition for rehearing, appellant states that she asks a rehearing and re-examination of the issues presented, upon all the grounds heretofore urged and for such further reasons as are urged in the argument in support of the petition for rehearing. Other and additional counsel have appeared and, with counsel for appellant, have filed more elaborate arguments. A rehearing was granted, in order that the matters now to be discussed might be given further consideration.

The facts in regard to the general situation have been heretofore set out. To the proper understanding of the point now under consideration, it is necessary to refer to some other facts.

West Forty-seventh Street, which is east of plaintiff's property, is a north and south street. Prior to 1917, when these proceedings were had, it was open north from Forest Avenue, which lies immediately north of plaintiff's property, and south from University Avenue. It did not extend between these two streets —that is, Forest and University—a distance of about 1,260 feet; so that, for that distance, and along plaintiff's property, it was a new street which was being opened or extended and improved. The city published notice of a proposed resolution of necessity for opening and extending said West Forty-seventh Street between Forest and University Avenues, and the limits of the district against which the cost thereof was to be assessed. Subsequently, the resolution was passed. Land was condemned for the extended street, part of which was taken from plaintiff's property, and she was allowed and paid $525 therefor. The street was graded, as so extended, and opened to the public. The cost of the land and of the opening and grading of the new street, and other like expenses, aggregating $8,686.87, were assessed against the land in the district, and assessments were fixed against the different parcels of land, including plaintiff's, as before stated. The notice and resolution both recite that the cost of the land and of the opening and grading would be charged to the benefited district. The items making up the total amount before stated are: Jury awards to property owners, $4,892; sheriff's fees, jurors' fees, grubbing trees, certain amounts stated, and for grading,—7,956 cubic yards, at $.42,—$3,341.52. The last item, of grading, is the item, and the only item, to which plaintiff makes objection, at least so far as the point now under consideration is concerned. One of the objections made by appellant before the council was, in substance, that the city had no authority or jurisdiction to assess against plaintiff's property the cost or any part of the cost of grading Forty-seventh Street, and that same is contrary to the provisions of the laws of Iowa. This grading brought the street to the established grade. It was not done as part of a paving proposition. It is not claimed that the paving of Forty-seventh Street was contemplated,—at least, not in connection with this grading. Appellant states in her last argument that it was not for the purpose of preparing the subgrade to receive

the pavement. She does claim, however, that the grading in question was for the purpose of bringing the street up to the subgrade only. We do not so understand the record. Evidence introduced on her behalf shows that the street was graded to the established grade. It seems to us that one trouble with appellant's contention is the assumption or theory of the evidence that this grading brought the surface up to the subgrade only,—that is, that it is now ready for paving; and the argument assumes this to be so, and that, therefore, where the improvement contemplated is paving, then only grading between the subgrade and the established grade may be assessed. In other words, if the grading done in the instant case brought it up to the subgrade only, there would be no dirt to remove between the subgrade and the established grade, and therefore no amount therefor could be assessed. Doubtless, when the street is further improved, if at all, by paving, then the question of removing the earth lying between the subgrade and the established grade will come up; and if the street is above the established grade, then the cost of the removal of so much of the dirt, if any, as is above the established grade could not, under Section 792, Code Supplement, 1913, be assessed against the abutting property, since that section of the statute provides that only so much of the cost of the removal of the earth and other material as lies between the subgrade and the established grade shall be assessed to abutting property. As we understand it, this has reference to dirt which it is necessary to remove for the paving material, the top of which, when the improvement is completed, will be at the established grade.

Forty-eighth Street is paved. The south end of this property is a block from the University car line. On Forty-sixth Street, in the territory north of University, are well improved, modern homes. Before this grading, the northeast corner of plaintiff's property was about six feet above grade; and south of that, in Forty-seventh Street, is a draw, which was about six or seven feet too low. South of this, it is too high. Prior to the proceedings to open this street, a petition had been filed with the city council, and plaintiff was one of the signers of the petition. This petition by property owners asked that the street be established from University Avenue to Forest Avenue, about

280 feet west of Forty-sixth Street. The net distance between Forty-sixth and Forty-seventh is 277.5 feet, instead of 280, as stated in said petition. The distance is less than 300 feet. There was a substantial, and almost literal, compliance with the request of plaintiff and other property owners, by the action of the council in establishing the street. Plaintiff objected to the introduction of said petition in evidence, on the ground that the resolution of necessity, as adopted, does not state that the improvement was to be made upon the petition of the property owners. The petition was to establish a street, but contained no reference to grading.

The city contends that the proceedings are under Section 751 of the Code and the several amendments thereto. This section is in Title V, Chapter 6, of the Code. Appellant contends that they are under Section 792, in Title V, Chapter 7. Numerous amendments and changes have been made in both sections. Some of the cases cited by appellant were decided before some of the amendments were made. Each party traces in detail the different amendments, beginning as far back as 1870. Appellant does not claim that the city did not have power, under Section 751, to open and improve the street in question, but contends that neither Section 751 nor any other statute authorizes the assessment for grading such as was done in the instant case. The argument is that there is no authority in the statutes to assess the cost of grading, except as found in Section 792, which, as they say, in a limited degree permits the assessing of the cost of grading against private property, and that is the cost of the removal of earth and other materials between the subgrade and the established grade; and that Section 751 has no bearing on the subject of grading. Section 751 as it appears in the Code of 1897 provides that the expenses of such repairs and improvements—that is, opening and improving streets—may be paid from the general fund, or from the highway or poll taxes, or partly from each of such funds. Section 782 of the Code of 1897, in Chapter 6, gives cities and towns power to establish grades and provide for the grading of any street, highway, avenue, alley, etc., the expense thereof to be paid from the general or grading fund, or from the highway or poll taxes of such city or town, or partly from each of said funds. Section

818, under Chapter 7, provides that the cost of opening, widening, extending, and grading any street, etc., shall be assessed as a special tax against the property abutting thereon, in proportion to the number of linear front feet of each parcel so abutting. This statute was changed, in providing for assessment according to benefits. In the Code Supplement, 1913, Section 751 reads that the expense of such extension, improvement, and repairs may be paid from the general fund, or from the highway or poll taxes, or partly from each of such funds, or by assessing all or any portion of the cost thereof on abutting property, according to the benefits derived from such extension, repairs, or improvement, as provided in Chapter 7, Title V, of the Code, and amendments thereto. This statute was further amended by the thirty-sixth general assembly, and appears as Section 751 in the Supplemental Supplement, 1915, and provides for streets, etc., thereafter dedicated to public use, and acceptance and confirmation thereof by ordinance or resolution, and that the expense of such extension, repairs, and improvements, may be paid from the general fund, or from the highway or poll taxes of such cities or towns, or partly from each of such funds, or by assessing all or any portion of the cost thereof on abutting and adjacent property according to the benefits derived from such extension, repairs, and improvements, as provided in Chapter 7, Title V, of the Code, and amendments thereto; and adds that the district benefited, in which adjacent property is to be assessed, shall be designated and determined by the council in the ordinance or resolution ordering such extension, repairs, and improvements, "provided that nothing in this act shall be construed as changing the manner of assessing abutting and adjacent property for the cost of paving, guttering, curbing or macadamizing streets and alleys." The first part of the section, in regard to the power to establish, open, extend, and improve streets, remains the same as in the Code of 1897. The changes made by this are in reference to dedications thereafter, and in reference to districts benefited, and no changes are made in the manner of assessing the cost of paving, guttering, curbing, or macadamizing streets, etc. It does not say that no change is made in the manner of assessing for grading. No change is made in the power granted in the first part of this

section in regard to establishing, opening, improving, etc., streets.

Section 792, as it appears in the Code of 1897, reads:

"Cities shall have power to improve any street, highway, avenue or alley by grading, parking, curbing, paving, graveling, macadamizing and guttering the same or any part thereof, and to provide for the making and reconstruction of such street improvements, and to assess the costs on abutting property, as provided in this chapter; but the construction of permanent parking, paving, graveling, macadamizing or guttering, shall not be done until after the bed therefor shall have been graded, so that such improvement, when fully completed, will bring the street, highway, avenue or alley up to the established grade: provided that only so much of the cost of the removal of the earth and other material as lies between the subgrade and the established grade shall be assessed to abutting property."

That section now reads the same, except that there has been added to it a provision in regard to salvage upon repaving. Section 792-a, Code Supplement, 1913, provides, in substance, that, when any city or town council or board of public works levies any special assessment for any public improvement against any lot or tract of land, such special assessment shall be in proportion to the special benefits conferred upon the property thereby, and not in excess of such benefits, etc. Doubtless, the purpose of this section was to require assessments to be made according to benefits, rather than under the front-foot rule. Section 792-b provides for the payment of deficiencies. Section 792-c provides that, so far as applicable, Sections 821, 822, 823, 824, 829, and 839 of the Code shall govern all special assessments, unless otherwise specially provided. Section 792-d provides that Sections 834 and 835 of the Code, in reference to assessments against railways and street railways, shall not be affected. Section 792-e makes the act applicable to cities under special charter, and Section 958 does so as to Section 751. Section 792-f repeals Chapter 53, Acts of the Thirty-third General Assembly, and enacts that incorporated towns shall have the powers conferred by Chapter 7, Title V, for the construction of street improvements authorized in Section 792 of the Code, under certain circumstances. Section 792-g provides for the

assessment against property not abutting, and provides certain limitations. This section will be referred to later, on another point argued by appellant. Section 792-h, passed by the thirty-fifth general assembly, repeals all acts and parts of acts in conflict therewith.

In framing the different sections of the statute, and some of the amendments perhaps, not all the things referred to in the first part of the section are repeated when again referred to. For instance, in Section 751, power is given cities to do a number of things. Later in this section, instead of repeating all, it reads, "such repairs and improvements," etc.; and still later in the same section, it refers to the expense of such extension, improvements, and repairs,—that is, *such* as had preceded. As we shall see later, the word "improve" or "improvement" refers to more than one of the matters first referred to in the section. By Chapter 75, Acts of the Thirty-fifth General Assembly, the section was amended in two respects: First, so that it should apply to all cities having a population of more than 30,000; second, by adding to the last clause of Section 751 in the Code of 1897 the following words:

"Or by assessing all or any portion of the cost thereof on abutting property according to the benefits derived from such extension, repairs or improvements, as provided in Chapter 7 of Title V of the Code, and amendments thereto."

It seems clear to us that the purpose of the latter part of this amendment was that the expense of such improvement, etc., might be paid by assessing all or any portion of the cost on abutting property, as provided in Chapter 7, Title V, and amendments; also, that it should be according to the benefits derived. From this reference, it seems to us quite clear that improvements, which, we shall see later, include grading, might be assessed against abutting property, under Chapter 7. Appellant cites *State v. Corning Sav. Bank,* 139 Iowa 338, *State v. Read,* 162 Iowa 572, and other cases, to the proposition that the provisions of Sections 751 and 792 are not in conflict, and must be given the construction which will sustain both sections. Some of these decisions were made before some of the later changes in both Sections 751 and 792. We think that Section 751 includes the cost of grading as one of the elements to be

assessed to property in the benefited district. It gives power to create new streets, as this was, and to make the more important changes, such as widening, straightening, narrowing, and so on. The words "establish," "lay off," and "extend" involve acquiring lands, preparing them for public use by grading and filling, to make a roadway, gutters, parking, and so on. "To open and improve" involves grading, such as was done here. After opening the street, it was the duty of the city to improve it by grading, in such a way as to fit it for public use, and it had the right to so grade the street as to bring it to the established grade. We take it that the grading in the instant case consisted, not only of the removal of earth where the surface was above grade, but of filling places where it was below grade. It was not merely removing dirt between the subgrade and the established grade, under the statute relied upon by appellant in paving operations. It may be that, in a sense, Sections 751 of the Code and 792 are separate; and yet the provisions of Chapter 7, which includes Section 792, are, by reference, made a part of Section 751. Appellant so states in discussing the proposition referred to in the next division of this opinion. In referring to the case of *Peterson v. Incorporated Town of Stratford*, 190 Iowa 45, appellant there argues that, in that case, Sections 810 to 836 in Chapter 7 are referred to by Section 751 in Chapter 6, and that only such sections were involved in that appeal; but it is argued that the decision is broader than that, and that it expressly holds that the reference in Section 751 is to all those provisions of Chapter 7 which deal with street improvements and procedure therefor; that thus the reference includes Sections 792 to 792-g, 793, and 839 at least, because these sections are all found in Chapter 7, and refer expressly to street improvements. And we shall see later that the right to establish, open, and improve includes grading, such as that involved in the instant case, and provides for assessment therefor, under Chapter 7. True, as before suggested, if further improvements in the way of paving are undertaken, plaintiff's property may not be assessed for any grading except the removal of dirt between the subgrade and the established grade, to permit the paving. The words in Section 751, "widen, straighten, narrow, vacate," refer to changes in existing streets. It is contended

by appellee that the words "improve" and "repair" include grading, and that the word "open" is of similar import. We think this must be so, and that the words include grading as an essential element. This being so, we cannot escape the holding in *Hutchins v. Hanna*, 179 Iowa 912, 913, that grading is properly to be included in the assessment for cost of such a new street project, under Section 751. Section 792 expressly includes grading as a street improvement. It gives the city power to improve any street by grading, paving, graveling, etc. In *Chase v. City of Sioux City*, 86 Iowa 603, 607, the court discusses the word "improvement," as applied to an action for damages against a city for changing the grade, and holds that grading can be classed as an improvement. See, also, *Talcott Bros. v. City of Des Moines*, 134 Iowa 113, 117, decided before the amendments to Section 751, by the thirty-fifth and thirty-sixth general assemblies. The court held that the words "improve" and "repair," as used in the statute, included power to grade. We said:

"A municipality takes title in fee to streets by authority of statute, and for a specific purpose. Having acquired title, it becomes its right—and not only that, but, subject to some qualifications as to time and manner, its duty—to 'improve and repair.' Code Section 751. Now, it is apparent to every observing man, and hence must have been to the legislature, that a system of streets constructed to meet the requirements of the public is not possible in the average municipality by conforming strictly to the natural surface of the soil. There must be a cut here and a fill there. When, therefore, municipal authority was granted to acquire land for and to lay out streets, there was annexed the general power to establish grades and to improve in accordance with such grades. Code Sections 751, 782. And it has never been doubted but that, within the contemplation of the statute, the right to grade and improve is coextensive with the limits of the street. *Gallaher v. City of Jefferson*, 125 Iowa 324. Title as for a street being present, the municipality may not only enter upon and proceed to improve, but, in the language of the cases, the character and extent of the improvement to be made, as of grading, etc., is for the exclusive determination of the municipal authorities. The courts will not interfere

with their action unless fraud or oppression is made to appear.''

This case is cited as bearing upon the proposition that the words ''improvement,'' etc., include grading. See, also, *Wolff Chemical Co. v. Philadelphia,* 217 Pa. 215 (66 Atl. 344, 347); *Scott v. City of Marshall,* 110 Mo. App. 178 (85 S. W. 98, 99). Counsel for appellant seem to concede that there is nothing in principle that prevents the cost of grading from being assessed to private property as an improvement to city streets, and we understand the argument to concede that, at different times, under earlier statutes, this has been expressly permitted by law. The specifications for the grading in question are not in the record. Appellee cites authority to the proposition that the proceedings are presumed to be regular, and that the burden is on plaintiff to establish the contrary. It appears that, in the proceedings in question, the city attempted to follow the statutes, and we think there was a substantial compliance therewith. The procedure under Section 751 is discussed by this court in *Peterson v. Incorporated Town of Stratford,* 190 Iowa 45. The question in that case was in regard to failure of the town to give notice. Reference in the opinion is made to the fact that Section 751 refers to the provisions of Chapter 7, Title V,—that is, Sections 792-a to 792-d, Code Supplement, 1913. These statutes refer to Sections 821 to 824. We think, therefore, that the procedure to be followed is that provided in Section 751 and other statutes just referred to. See, also, *Shaver v. Turner Impr. Co.,* 155 Iowa 492, 497, 499; *Owens v. City of Marion,* 127 Iowa 469, 473, 476; *Peterson v. Incorporated Town of Stratford,* supra; *Koontz v. City of Centerville,* 161 Iowa 627, 629, 630. See, also, *Brown v. City of Creston,* 189 Iowa 1111, as having some bearing on this point. The first opinion in that case in 174 N. W. 380 (not officially reported), is cited by appellant on another point. But that opinion was withdrawn, and a contrary conclusion reached on rehearing. *Comstock v. City of Eagle Grove,* 133 Iowa 589, and *Bennett v. City of Emmetsburg,* 138 Iowa 67, cited by appellant on another proposition, have been overruled. *Koontz v. City of Centerville,* supra. Other arguments pro and con are advanced; but the opinion is already too long, and we shall not attempt to further discuss them.

6. It is further contended by appellant that the city had
no jurisdiction or authority to assess any of the cost of this
improvement against that part of appellant's property which
was situated more than halfway from the im-

3. MUNICIPAL
CORPORATIONS:
public improve-
ments: district
assessments.

proved street to the next street, and in no event
more than 300 feet from the street so improved.
We have seen that all of plaintiff's property was
within 300 feet. The argument at this point is divided into two
subheads: First, whether the amendment to Section 751, by
the thirty-sixth general assembly, enlarged the district subject
to the tax; and second, What is adjacent property, within the
meaning of this act? Plaintiff's several lots were all in one
body, and occupied all the space between Forty-seventh and
Forty-eighth Streets; it was all within 300 feet from Forty-
seventh Street; and the improvement in question did not have
to do at all with Forty-eighth Street. The resolution of neces-
sity established a district which included the property of plain-
tiff and other properties, and designated and determined that
such district would be benefited by the improvement. Plaintiff,
with others, had petitioned the council for this improvement.
Her lots were treated as one property, and but one objection
was filed before the council to apply to her lots. But one notice
of appeal was given when the appeal was taken to the district
court. Reliance is placed upon Section 792-g. This act was
passed by the thirty-fifth general assembly, and does not refer
to the establishment of districts. Later, the thirty-sixth general
assembly, in Sections 840-h to 840-r, inclusive, Supplemental
Supplement, 1915, provided for the establishment of districts.
Appellant argues that the provision of Section 792-g in regard
to assessing property not more than halfway is mandatory, and
that an assessment against property beyond the limit prescribed
is void. In support of this they cite *Brown v. City of Creston,*
(Iowa) 174 N. W. 380 (not officially reported) ; *Rawson v. City
of Des Moines,* 133 Iowa 514; *Hutchins v. Hanna,* supra. We
have already pointed out that the first two of these cases have
been overruled. The question came up in *Brown v. City of
Creston,* 189 Iowa 1111, after the thirty-sixth general assembly
had authorized the establishment of districts (Section 840-i,
Supplemental Supplement, 1915). The latter part of Section

751 refers to assessing abutting and adjacent property, and provides that nothing in the act shall be construed as changing the manner of assessing such property. We held in the *Brown* case, supra, that a district may include adjacent as well as abutting property, and that the provisions of Section 792-g forbidding assessments more than halfway to the next street, etc., have no application to such district assessment.

7. Other and new questions are presented in the argument on rehearing. Appellee contends that plaintiff is estopped to question the proceedings herein, or the assessments, and has waived the right to do so, because she petitioned for the opening of this street and accepted payment for a part of her land taken therefor; that she appeared before the council after the work was done, and while the assessment was being made, and that this waives sufficiency of notice, and estops her to question the jurisdiction of the council or the propriety of the proceedings; that such questions may be raised without any pleading thereof. But one set of objections was filed by appellant before the council—one common objection in regard to the five different pieces of property. There was but one notice of appeal to the district court and to this court. Appellee further contends that, there being five separate assessments in question on the five lots, which were differently situated with respect to and affected differently by the new street opening, this presents distinct and separate points for objections, and that a common objection for all combined was not an objection for any one lot or against any one assessment, and gave the council no proper chance to correct any mistakes; that, for .these reasons, the objections are waived, and the court has nothing before it on this appeal, and no jurisdiction. In response to this line of argument, appellant says that the matter may not be raised at this stage of the appeal, for the reason that matters not raised in the brief and argument cannot be raised on rehearing; and further, as to the last proposition, that the objection to the jurisdiction of this court was not in time, because objections to the jurisdiction were not made ten days before the date assigned for the submission of the case (Code Supplement, 1913, Section 4139); that the submission referred to in Section 4139 is the original submission. No such objections were then made, but they were made more

than ten days before the resubmission after the rehearing was granted.

In the view we take of the case, it is unnecessary to discuss these several propositions. We are of opinion that the judgment of the district court ought to be, and it is,—*Affirmed*.

WEAVER, EVANS, STEVENS, ARTHUR, and FAVILLE, JJ., concur.