John N. GRIDLEY, Jr., Petitioner
and Appellant,

v.

Tim ENGELHART, Commissioner of the Bureau of Administration of the State of South Dakota, and James Brinkman, Director of Purchasing and Printing for the Bureau of Administration of the State of South Dakota, Appellees,
and
Compass Insurance Company,
Intervenor and Appellee.

No. 13604.

Supreme Court of South Dakota.

Argued April 28, 1982.

Decided July 14, 1982.

John N. Gridley, III, Sioux Falls, for petitioner and appellant.

Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, for appellees Engelhart and Brinkman; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Charles M. Thompson of May, Adam, Gerdes & Thompson, Pierre, for intervenor and appellee.

HALL, Circuit Judge.

This is an appeal from a judgment of the trial court quashing alternative writs of mandamus and prohibition which had been issued against the appellees, and further denying appellant's application for peremptory writs of mandamus and prohibition. We affirm.

The appellant is a resident and taxpayer of the State of South Dakota. He is also a licensed insurance agent for Western Casualty and Surety Company (Western). Appellee Engelhart is the Commissioner of the Bureau of Administration of the State of South Dakota and is authorized by statute to purchase public liability insurance. Appellee Brinkman is the Director of the Division of Purchasing and Printing of the Bureau of Administration of the State of South Dakota. Intervenor, Compass Insurance Company (Compass), is a wholly owned subsidiary of American Druggist Insurance Company and was the successful bidder in the sale of liability insurance to the State of South Dakota.

On or about June 24, 1981, appellees began the process of soliciting new insurance contracts for the State of South Dakota. The State was interested in obtaining comprehensive general liability insurance and comprehensive automobile liability insurance. At the time the decision was made to solicit new insurance contracts, the State's automobile fleet was insured through Western, while Compass insured the State of South Dakota under the terms of a general comprehensive liability insurance policy. Appellee Brinkman prepared specifications and bid proposal forms so that the State could solicit bids for the purchase of insurance. These specifications were reviewed by the Director of the Division of Insurance of the State of South Dakota.

On July 15 and 16, 1981, notice of the fact that the State was soliciting bids for liability insurance was published in the "Sioux Falls Argus Leader" and the "Rapid City Journal." After the July 15 notice was published, two insurance agencies located in Pierre, South Dakota, obtained the specifications and bid proposals personally from the appellees' offices. Additionally, on July 16, 1981, the specifications and bid proposal forms were mailed from Pierre, South Dakota, to all known South Dakota insurance agencies, including the appellant's.

On August 20, 1981, bids pertaining to the comprehensive general liability insurance policy and the comprehensive automobile liability insurance policy were opened and reviewed by the appropriate state officials. Compass was the only bidder on the comprehensive general liability policy and the lowest of several bidders on the automobile fleet liability policy. Compass was awarded the contracts on both policies.

On August 28, 1981, appellant requested, and the circuit court issued, alternative writs of mandamus and prohibition against appellees, thus preventing the execution of the contracts.

Subsequent to the trial court's granting of the alternative writs of prohibition and mandamus, a "cut-through policy" was offered to the State, in which American Druggist Insurance Company, Compass' parent company, would insure the State of South Dakota for any losses if Compass became insolvent or unable to meet the State's claims for losses.

After conducting an evidentiary hearing, the trial court quashed the alternative writs of mandamus and prohibition and denied the issuance of peremptory writs of mandamus and prohibition.

■ The trial court found as a matter of law that SDCL 5–23–2 [1] must be interpreted in such a manner so as to include a requirement that insurance be purchased through competitive bidding. This portion of the judgment is questioned by appellees in their argument in which they dispute the trial court's conclusion of law on this matter and now attempt to argue that: (1) the State, when purchasing insurance, is not required to comply with the competitive bidding provisions of SDCL ch. 5–23; and (2) insurance is a professional service contract exempted from mandatory competitive bidding provisions. The appellees, having failed to comply with SDCL 15–26A–

1. SDCL 5–23–2 provides in pertinent part:
   The bureau of administration shall purchase, or authorize the purchasing of . . . all furniture and fixtures, equipment, supplies, printing and stationery, fuel, clothing, staple foodstuffs, utilities, and all other commodities for each and every department of the state government . . . .

22,[2] have waived their right to appeal on this issue, and thus the matter is not properly before the court. Consequently, the trial court's conclusion of law on this issue becomes the law of the case. *Orr v. Kneip,* 287 N.W.2d 480 (S.D.1979); *St. John's First Lutheran Church v. Storsteen,* 77 S.D. 33, 84 N.W.2d 725 (1957); *First Nat. Bank v. Cranmer,* 42 S.D. 404, 175 N.W. 881 (1920).

The first question we must deal with is the issue of whether or not the notice that was published in the "Sioux Falls Argus Leader" and the "Rapid City Journal" announcing that the State was accepting bids for liability insurance was defective in that it failed to strictly comply with SDCL 5–23–10.[3] Appellant contends that the entire bid letting process is void and unenforceable pursuant to SDCL 5–23–33[4] in that the State did not include in its notice the statutory language of SDCL 5–23–10 that "blank schedules and specifications in detail for bids may be obtained from the bureau of administration."

While the appellant contends that the notice published in the two newspapers was improper in that it failed to indicate where persons interested in submitting an insurance bid might obtain blank schedules and specifications, it is clear from the record that the appellant, as well as approximately two hundred fifty other insurance agents, received copies of the bid proposals and specifications. Further, the published notice specifically stated in bold capital letters that "THE DIRECTOR OF PURCHASING & PRINTING WILL OPEN IN HIS OFFICE AT PIERRE, SOUTH DAKOTA BIDS ON THE FOLLOWING . . . ." This information, while not in strict compliance with the statutory language, would put prospective bidders on notice as to where they might obtain additional desired data. There is no showing in this record that anyone, including the appellant, was in any manner restricted or prevented from submitting a bid on these contracts. While there may have been a technical defect in the publication of notice, such deficiency, under the facts of this case, will not invalidate the execution of any subsequent contract. The intent of the legislature in requiring such notice was to give all interested persons an adequate opportunity to obtain the necessary information and allow them to submit a bid. The appellees, while strictly not in compliance with the statute, did carry out the intent of the legislature, and substantially complied with the statute. A technical defect in a notice of advertisement will not serve to invalidate a contract where there has been substantial compliance with such statute. Cf. *Blood v. Spring Creek Number 12, Common School Dist.,* 78 S.D. 580, 105 N.W.2d 545 (1960). See also *Bud Johnson Const. Co. v. Metro. Tran. Com'n,* 272 N.W.2d 31 (Minn.1978); *Nielsen v. City of Saint Paul,* 252 Minn. 12, 88 N.W.2d 853 (1958); *Royal v. City of Des Moines,* 195 Iowa 23, 191 N.W. 377 (1923); 64 Am.Jur.2d *Public Works and Contracts* §§ 17, 50 (1972); 10 McQuillin, Municipal Corporations § 29.65 (3d ed. 1981).

The appellant next contends that the State's specifications were so indefinite and imprecise as not to afford a reasonable basis

---

2. SDCL 15–26A–22 provides:

An appellee may obtain review of a judgment or order entered in the same action which may adversely affect him by filing a notice of review with the clerk of the Supreme Court within twenty days after the service of the notice of appeal. The clerk of the Supreme Court shall not accept for filing such notice of review unless accompanied by proof of service of such notice on all other parties. The notice of review shall specify the judgment or order to be reviewed.

3. SDCL 5–23–10 states:

A brief notice of scheduled lettings shall be published in at least two consecutive issues of one legal daily newspaper published in each congressional district of this state. Such notices shall also state that blank schedules and specifications in detail for bids may be obtained from the bureau of administration.

4. SDCL 5–23–33 states:

All contracts entered into or orders given by any person or persons for any of the articles or items mentioned and referred to in this chapter, to be paid for either directly or indirectly out of the funds of the state of South Dakota, are void and unenforceable, unless said orders or contracts are entered into in the manner provided for herein.

upon which the competitive bid letting process could take place.

■ Bid specifications as they pertain to public contracts must be sufficiently definite and precise so as to afford a basis for bids and they must be free of restrictions, the effect of which would stifle competition. Such specifications must be sufficiently detailed upon all essential elements so as to afford a basis for full and fair competitive bidding upon a common standard. *Parks v. City of Pocatello*, 91 Idaho 241, 419 P.2d 683 (1966); *Duffy v. Village of Princeton*, 240 Minn. 9, 60 N.W.2d 27 (1953); *Ricketson v. City of Milwaukee*, 105 Wis. 591, 81 N.W. 864 (1900); 64 Am.Jur.2d *Public Works and Contracts* § 51 (1972).

■ In reviewing this matter, we are mindful of the fact that the specifications covered such specific topics as the term of the policy, the scope of coverage, policy definitions, policy exclusions, limits of liability, the types and numbers of motor vehicles owned by the State of South Dakota, and the loss experience of the State in prior years. The specifications were reviewed and approved by State officials who had extensive experience in the insurance industry. While the appellant asserts that the specifications were too general, apparently a number of other insurance companies do not share his opinion in that they deemed the specifications specific enough to submit their own bids. Nowhere in the record is there evidence that anyone, other than the appellant, had any objections to the specifications. The bids on the automobile liability policy, other than the appellant's, ranged from approximately $126,000 to $149,000. In view of the relatively close bids submitted by the other insurance companies, it is apparent that those companies were able to identify the potential benefits and risks involved so as to submit a knowledgeable and competitive bid.

Thus, we are of the opinion that the insurance specifications prepared by the State were sufficiently detailed, definite, and precise upon all the essential elements so as to secure fair competition upon equal terms to all bidders.

The appellant next asserts that the State is not permitted to award the bid to Compass because Compass was an unqualified bidder under the terms of the insurance specifications.

■ The specifications prepared by the State provided: "Coverage is to be written by an admitted company rated not less than A:10 by *Best's Insurance Guide*. The company or companies must be properly licensed to conduct business in the State of South Dakota." The appellant contends that the State could not properly award Compass the insurance contracts in that Compass did not have a *Best's Insurance Guide*[5] (Best's) rating of at least A:10 at the time of the bid letting. The State's purpose of including in the specifications a requirement that interested bidders be rated at least A:10 by Best's was to insure that the State would receive bids from financially sound companies. In order to determine which companies were eligible for such bidding, the State chose to use *Best's Key Rating Guide* as a reference so as to insure the utilization of uniform guidelines and employ a common standard in determining the qualifications of a particular company. The intent of the State when inserting this language in the specifications was not to strictly require that the company actually be rated A:10, but more accurately, that the company possess those traits represented by the A:10 rating.

The appellant asserts that Compass did not possess a rating of at least A:10 in that Best's rating guide indicates that Compass is not eligible for its own rating until 1984. However, Best did assign Compass the same A:12 rating as its parent company, American Druggist Insurance. Assuming arguendo, that Compass itself was ineligible for any rating until 1984, due to guidelines

5. *Best's Key Rating Guide* (75th ed. 1981) is a publication prepared by the A. M. Best Company of Oldwick, New Jersey, which provides policyholders' ratings, general ratings and financial size categories along with comprehensive statistics showing the financial condition, general standing and transactions of American insurance companies.

employed by Best's, it is clear, nonetheless, that Compass possessed the financial stability in comparison with other insurance companies, based upon averages within the property-casualty insurance industry, to qualify for an A:12 rating, which rating would exceed the State's requirements. We are of the opinion that Compass was a qualified bidder.

The appellant next argues that the appellees allowed Compass to materially alter its bid after the bid letting and therefore the State is not permitted to award the contracts to Compass. The appellant bases his argument upon the fact that appellees entered into a separate "cut-through policy" with American Druggist Company whereupon American Druggist Company would insure the State of South Dakota for any losses if Compass became insolvent or unable to meet the State's claims for losses.

It is a general rule that the bid of one proposing to contract for the doing of a public work must, in order to secure the contract, respond or conform substantially to the advertised terms, plans, and specifications. After bids have been received and opened, no material change can be made in any bid which may be more favorable to the successful bidder and is in variance with the specifications. *Coller v. City of Saint Paul*, 223 Minn. 376, 26 N.W.2d 835 (1947); 64 Am.Jur.2d *Public Works and Contracts* §§ 58, 59 (1972). The test of whether a variance between a bid and a specification is material is whether it gives one bidder a substantial advantage or benefit not enjoyed by the other bidders. *Duffy v. Village of Princeton*, supra.

In applying these principles to the instant case, it is clear that the "cut-through policy" did not give Compass any advantage over other bidders. As previously indicated, Compass was a qualified bidder on the State's insurance policies. Its bid conformed to the specifications and requirements. And, Compass was the low bidder on both policies. Thus, Compass was properly awarded the insurance contracts irrespective of the later negotiated "cut-through policy" with American Druggists.

The fact that appellees subsequently negotiated this policy with American Druggists as additional security for the risk had no effect upon the award of the insurance contracts to Compass after the original bid letting. Accordingly, Compass did not obtain an unfair advantage by negotiation of the "cut-through policy."

We have reviewed the appellant's other contentions and find that they are either unsupported by the evidence or without merit.

We affirm the judgment of the trial court.

All the Justices concur.

HALL, Circuit Judge, sitting for DUNN, J., disqualified.