325 N.W.2d 53 (1982)
In the Matter of S.Z., Alleged Dependent and Neglected Child.
In the Matter of C.Z., Alleged Dependent and Neglected Child.
No. 13403.
Supreme Court of South Dakota.
Submitted on Briefs October 2, 1981.
Decided October 20, 1982.
*54 Janice Godtland, Asst. Atty. Gen., Pierre, for appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.
Douglas G. Fosheim of Benson, Wehde & Severson, Huron, for appellees.
DUNN, Justice (on reassignment).
This is an appeal by the State from an order determining that the notice given to the Rosebud Sioux Tribe pursuant to the Indian Child Welfare Act, 25 U.S.C. §§ 1901-1963 (1978) (the Act) was inadequate, and from an order that transferred custody of the two minor children to tribal officials. We reverse and remand.
On May 22, 1979, the State commenced this dependency and neglect proceeding by filing petitions alleging that the two minors, S.Z. and C.Z., were dependent and neglected children. The mother, K.Z., is a member of the Rosebud Sioux Tribe, and the father, R.Z., is a non-Indian. The children are enrolled members of the Rosebud Sioux Tribe.
The parents first appeared before the circuit court on May 25, 1979. At that time, the trial court advised them of their right to court-appointed counsel. Both parents waived their right to court-appointed counsel, stipulated that they did not want the matter transferred to tribal court, and consented to foster care placement.
On June 27, 1979, the state's attorney sent a letter by certified mail to the tribal chairman of the Rosebud Sioux Tribe which stated, "Enclosed please find 2 Affidavits regarding the above children. These affidavits are notice to you under the Indian Child Welfare Act." The enclosed affidavits named the affiant as a social worker for the Department of Social Services (Department). The affidavits named the children, the parents, their tribal affiliation, and their nonreservation residency, and then summarized the circumstances that led to the Department's intervention.
The next hearing was held on July 17, 1979, and both parents again waived their right to counsel. This hearing was continued *55 to allow the mother to pursue alcoholic rehabilitation. An adjudicatory hearing was to be held on August 27, 1979, but this was also continued so that both parents could avail themselves of alcoholic rehabilitation counseling.
At the next hearing, on June 3, 1980, the court appointed an attorney to represent the children and an attorney to represent the parents. An adjudicatory hearing was held on July 2, 1980. At this time the parents entered into a stipulation that the children were dependent and neglected. A dispositional hearing was held September 3, 1980, and parental rights were terminated by decree dated September 19, 1980.
On January 7, 1981, the parents petitioned the court to set aside the decree, alleging that the Act had been violated inasmuch as the notice that had been given to the Rosebud Sioux Tribe of the pendency of the action in state court did not comply with the requirements found in 25 U.S.C. § 1912(a). The court granted this petition, and on January 28, 1981, the tribe gave notice of intervention and the parents consented to the transfer of jurisdiction from state court to the tribal court. A final hearing was held and the court ordered the State to surrender the custody of the children to the tribe.
Appellants contend the trial court erred when it found the notice given to the Rosebud Sioux Tribe on June 27, 1979, regarding the pendency of the action in state court did not comply with the requirements found in 25 U.S.C. § 1912(a). This section provides:
In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: Provided, That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding.
Id. (emphasis in original).
In essence, this statute requires the tribe be notified by registered mail of the pending proceedings and of the tribe's right to intervention.[1] We find that this requirement was substantially complied with in the case at hand.
We specifically address the timing and sufficiency of the substance of the notice. While it may be argued that the June 27, 1979, notice was insufficient in that it came after the parents' first court appearance on May 25, 1979, we conclude this delay did not prejudice the tribe. The notice was sent to the tribe fully one year before the final adjudication took place in this case. The tribe could have intervened at any point during this time period and cannot now be allowed to reopen the case simply because it did not avail itself of the opportunity to intervene.
We also believe the substance of the notice sent was sufficient to apprise the tribe of its opportunity to intervene in the case. Although not as artfully drafted as it could have been, the notice did inform the tribe of the nature of the pending proceeding and the circuit court in which the action *56 was pending. While the notice did not explicitly state the tribe had a right to intervene, we note the general tenor of the documents and the fact the Act had only been in effect for approximately two weeks when the petition was filed on May 22, 1979. 25 U.S.C. § 1923. Moreover, the Act itself in 25 U.S.C. § 1911(c) automatically grants the tribe the right to intervene at any point in the proceeding. Accordingly, we conclude the notice substantially complied with statutory requirements and was sufficient to put the Rosebud Sioux Tribe on notice of the pending proceeding and its right to intervene. Gridley v. Engelhart, 322 N.W.2d 3 (S.D.1982).
Appellants also contend the trial court erred when it transferred jurisdiction from the state court to the tribal court on January 28, 1981. It is important to note that this is not the case of Indian children who are domiciled or residing on an Indian Reservation and as a result are subject to the exclusive jurisdiction of the tribal court. 25 U.S.C. § 1911(a). Rather, the action comes within 25 U.S.C. § 1911(b) which provides for the jurisdiction of the original proceeding to be in the state court. That section reads:
In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.
Id. (emphasis in original).
This statute provides that objection by either parent will keep jurisdiction in the state court. At the very first hearing on May 25, 1979, both parents stipulated that they did not want the matter transferred to tribal court. Neither parent altered their position on this transfer issue, despite the subsequent appointment of counsel, until well after the termination decree was entered in this case. We believe the parental veto exercised in this case was made knowingly and voluntarily and thus we conclude the trial court erred when it transferred jurisdiction to the tribal court.[2]
We reverse and remand this case with the direction that the September 19, 1980, decree terminating parental rights be reinstated.
MORGAN, J., and MILLER, Circuit Judge, concur.
WOLLMAN and HENDERSON, JJ., dissent.
MILLER, Circuit Judge, sitting for FOSHEIM, C. J., disqualified.
WOLLMAN, Justice (dissenting).
I dissent from the majority opinion because I believe that the notice provision of 25 U.S.C. § 1912 was violated on the basis of both the sufficiency of the substance of the notice and the timing of the notice.
The majority cites Gridley v. Engelhart,supra, and relies on the rule of substantial compliance to find the notice sufficient under the Indian Child Welfare Act (ICWA). Although a rule of substantial compliance may suffice to carry out the notice provisions of statutes governing mundane matters of property law, see, e.g., Gridley,supra, more is required when the interests at stake are as important as those protected by the ICWA. Neither the state's attorney's letter nor the social worker's affidavits so much as mention a right of intervention. Even if a rule of substantial compliance should apply to ICWA cases, application of the rule would be strained to uphold the notice given in this case.
In an apparent attempt to excuse the type of notice given by the State, the majority *57 notes that the ICWA had been in effect for only two weeks. This fact, however, augmented, not lessened, the state's attorney's duty to explicitly inform the tribe of its right of intervention.
The letter and affidavits did not constitute timely notice. In the policy statement of 25 U.S.C. § 1902, Congress supported the "establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." 25 U.S.C. § 1912 bolsters this policy by providing that a party seeking foster placement of an Indian child must notify the child's tribe of its right of intervention, and by providing that no foster care placement proceeding shall be held until at least ten days after the tribe receives notice. On May 25, 1979, the parents appeared before the trial court and consented to the Department of Social Services' foster care placement. No notice of any kind was sent to the tribe until June 27, 1979. Notice sent at this time not only violated a specific provision of 25 U.S.C. § 1912, but was in contravention of a major policy behind the ICWAthat the arguments and desires of a tribe be considered by a state court before the State removes Indian children from the home.
25 U.S.C. § 1914 provides that if in a foster care placement or termination of parental rights action, any provision of 25 U.S.C. § 1912, the intervention statute, is violated, the state court can be petitioned to invalidate its action. As one commentator on the ICWA explains:
The right to intervene also is virtually meaningless unless notice of the proceedings is prompt and reliable and unless placements that have been made without adequate notice can be reversed. The Act expressly provides for reversal. If denied notice or the opportunity to intervene, the child's parent or tribe may petition for new proceedings.
R. Bash, The Indian Child Welfare Act of 1978: A Critical Analysis, 31 Hastings L.J. 1287, 1314 (1980). The notice in this case was neither prompt nor reliable. The trial court, therefore, was justified in granting the parents' request for new proceedings.
Contrary to what is implied in the majority opinion, an objection to transfer of jurisdiction under an invalidated action does not prevent consent to a transfer of jurisdiction under new proceedings. After the trial judge set aside the decree of disposition, the parents sent written consent to transfer of jurisdiction to the tribal judge, and the tribal court requested transfer of jurisdiction from the state court. The trial court, therefore, was justified under 25 U.S.C. § 1911 in transferring jurisdiction to the tribal court.[*]
This court has consistently required compliance with the provisions of the ICWA. See People in Interest of C.R.M., 307 N.W.2d 131 (S.D.1981); Matter of J.L.H. and P.L.L., 299 N.W.2d 812 (S.D.1980); Matter of Guardianship of D.L.L. and C.L.L., 291 N.W.2d 278 (S.D.1980). I see no reason why we should stray from that position in this case.
I would affirm the orders of the trial court.
HENDERSON, Justice (dissenting).
I join specially in the dissent of Justice Wollman.
Although a parent can object to and therefore block a transfer of jurisdiction from a state court to a tribal court, the parent's objection cannot destroy the tribe's right to intervene under 25 U.S.C.A. § 1912. Once a tribe has intervened, and conceding hypothetically that a state court unquestionably has jurisdiction, a tribe would still have the right to actively participate in the proceeding and to advocate the tribe's position as to the best interests of the Indian child and the child's placement.
*58 In this case, the Rosebud Indian Tribe was not only not told of its right to intervention but it was further told in the notice "this matter will not be transferred to the jurisdiction of the Rosebud Sioux Tribal Court." The notice to the tribe was for the purpose of closingnot opening the legal gate for the Indian people.
We must all remember that, in these ICWA cases, there are the rights of the parents to consider, the rights of the Indian children to consider, and the rights of the tribe which, by Congressional edict, is to protect and preserve the Indian culture and family. If an Indian child is removed from an Indian home without an opportunity for cultural input by that child's tribe, the entire purpose of the ICWA has been frustrated.
Matter of Adoption of Baby Boy L., 231 Kan. 199, 643 P.2d 168 (1982), is a case in which a parent objected to the transfer of jurisdiction to the Court of Indian Offenses, and the court held that if the ICWA were applicable, the trial court was in error in refusing to allow the tribe to intervene. Thus, this case supports the basic position of the two dissents herein regarding the Rosebud Tribe's right to intervene.
NOTES
[1] Nearly six months after notice was given in this case the federal government promulgated its "Guidelines for State Courts; Indian Child Custody Proceedings" which appeared in the Federal Register, Part III, Department of Interior, Monday, November 26, 1979. Since these guidelines were not available to the State in this case, the State cannot now be faulted for failure to adhere to the suggested procedure. We believe, however, that adherence to these guidelines in the future will prevent situations like the one before us from arising again.
[2] Moreover, assuming the parents had not waived their rights to transfer, 25 U.S.C. § 1911(b) still gives a trial court the right to refuse transfer on the basis of a showing of "good cause to the contrary." See Matter of Adoption of Baby Boy L., 231 Kan. 199, 643 P.2d 168 (1982).
[*] The majority contends that the trial court had a right to refuse transfer on the basis of the "good cause to the contrary" provision of 25 U.S.C. § 1911(b). It is the State, however, which has the burden of showing "good cause to the contrary." See Matter of M.E.M., 635 P.2d 1313 (Mont.1981). By not setting forth reasons for "good cause to the contrary" at the appropriate hearings, the State obviously did not meet that burden.