AFFILIATED DISTILLERS BRANDS CORP., Appellant

v.

GILLIS, et al., Respondent

(130 N.W.2d 597)

(File No. 10132.  Opinion filed October 12, 1964)

**Woods, Fuller, Shultz & Smith,** Sioux Falls, for plaintiff and appellant.

**Frank L. Farrar,** Atty. Gen., **John Dewell,** Asst. Atty. Gen., Pierre, for defendants and respondents.

RENTTO, J. The Commissioner of Revenue adopted an amendment to Rule 10 of the Rules and Regulations of the Department of Revenue relating to the alcoholic beverage laws of this state. It provided that those licensed as distillers and wholesalers of intoxicating liquor may not sell, give or deliver to a licensee of any class any intoxicating liquor other than high point beer and wine, in any container which is larger than a quart. Prior to the amendment gallon and half gallon sizes were permissible.

The plaintiff, engaged in the business of marketing, selling and distributing numerous well-known and extensively advertised brands of alcoholic beverages in the State of South Dakota, had built up a large and valuable volume of sales of whiskey in half gallon containers to licensed wholesalers therein. It brought this action to have the regulation declared invalid and asked an injunction to restrain its enforcement. It claimed that the authority under which the Commissioner issued the regulations is an impermissible delegation of legislative authority and, if not, the regulation was an arbitrary and unreasonable restriction on the liquor industry. The trial court ruled against the contentions of the plaintiff and entered an order dismissing the complaint. This appeal is from such action.

From the records in the Commissioner's office it appears that for the year 1963 there were licensed in the state 463 on-sale

and 545 off-sale liquor establishments. Of these our municipal-
ities operated 104 as on and off-sale combinations and 56 as
off-sale stores. As the terms imply the off-sale store sells liquor
by the package for use off the premises where sold and the on-
sale establishment sells it by the drink for consumption on its
premises.

. . In the summer of 1963, prior to the issuance of the amend-
ment on July 24th, the Commissioner learned from reports made
to his office of a phenomenal increase in the importation into the
state in half gallon containers of a brand of whiskey distributed
by the plaintiff. At that time in 1963 one of our licensed whole-
salers had bought from the plaintiff 2,150 cases of such whiskey in
containers of that size. In 1962 and during several preceding
years it had received only 25 cases annually. The Commission-
er was of the view that this increase was occasioned by a pro-
motional scheme instituted by the plaintiff under which a case
of half gallons of such whiskey retailed for less than a case of
quarts of the same liquor.

An investigation of the situation by the office of the Attor-
ney General covering the second quarter of 1963 indicated that
during that period, in 80 transactions, 475 half gallon bottles of
such whiskey were sold to retailers licensed as on-sale dealers.
An inspection of the premises of 25 of these licensees revealed
that only six of them had half gallon bottles displayed on their
bars. Of these one poured whiskey into drinks from such con-
tainers and the others only when specifically requested. The in-
vestigation disclosed that it was a rather common practice among
on-sale dealers to refill the quart bottles of that brand displayed
on their bars from the half gallon containers.

On the basis of these facts the Commissioner found that cer-
tain practices were taking place involving gallon and half gallon
containers which resulted in an evasion of taxes and constituted
a fraudulent business activity and a violation of SDC 5.0221. Ac-
cordingly, he promulgated the challenged amendment as an em-
ergency measure. The section of the Code referred to provides
"No person shall buy or sell any package which has previously
contained intoxicating liquor sold under the provisions of this title,

or refill any such package; provided however, that this section shall not apply to beer containers." By SDC 5.9904 its violation is made a misdemeanor.

■ The showing on which the Commissioner acted was presented to the trial court by affidavits which were not disputed or contradicted. The court concurred in the finding made by the Commissioner that certain licensees were refilling quart containers from the larger but less expensive gallon or half gallon containers and concluded that he was properly authorized to issue his amendment to regulation 10; that it was neither arbitrary nor unreasonable, but a proper exercise of the discretion and authority vested in him; and ordered the plaintiff's complaint dismissed. Its decision is silent on the tax aspect mentioned by the Commissioner and that feature is not urged. If such practice had any detrimental impact on the liquor revenue it could only be due to a diminution in the amount of the gross receipts tax occasioned by a reduction in the sale price of such whiskey to the licensee. Ch. 17, Laws of 1963.

■ ■ The theory of administrative rule making is that in certain fields and in some respects the public interest is better served by delegating a large part of detailed law making to expert administrators, controlled by policies, objects and standards laid down by the legislature, rather than having all the details spelled out through the traditional legislative process. In accord with the general rule we said in Application of Dakota Transportation, Inc., of Sioux Falls, 67 S.D. 221, 291 N.W. 589,

> "There are no constitutional objections arising out of the doctrine of the separation of the powers of government to the creation of administrative boards empowered within certain limits to adopt rules and regulations and authorized to see that the legislative will expressed in statutory form is carried out by the persons or corporations over whom such board may be given administrative power."

To be noted are these two prerequisites: (1) an expressed legislative will, and (2) legislative imposition of limitations on the ad-

ministrative agencies' power to adopt rules and regulations. In other words, the delegation is not constitutionally offensive where the legislature has adopted a clearly declared policy and has laid down understandable standards to guide the administrative action. Boe v. Foss, 76 S.D. 295, 77 N.W.2d 1. But the administrative authority must act within the limits of the power granted to it. Norwood v. Parenteau, 75 S.D. 303, 63 N.W.2d 807; Livestock State Bank v. State Banking Commission, 80 S.D. 491, 127 N.W.2d 139.

In empowering the Commission to promulgate rules and regulations the legislature said in SDC 5.0102 these may include "any reasonable regulations not inconsistent with this title or with federal laws or regulations, to effect the objects of this title, including, among others, regulations to insure purity of alcoholic beverages and true statements as to the contents of any container thereof". It goes on to provide that if the Commissioner deems it advisable he may "prohibit or regulate advertising of intoxicating liquor". In this section there is no express grant of power to make rules with respect to the size of containers. Nor is there such authority in any other section of our law. The legislature, itself since the enactment of Ch. 12, Laws of 1941, has regulated the size of beer containers. SDC 1960 Supp. 5.0114-1 and 5.9908.

Absent a specific grant of such power the Commissioner predicates his right to issue the regulation in question on that portion of SDC 5.0102 which gives him power to promulgate rules "to effect the objects of this title". As a general rule liquor control laws contain a detailed declaration of the objects and purposes which the legislature had in mind when it adopted the act. Our law today contains no such general declaration. Section 1 of Ch. 134, Laws of 1935, whereby our state re-entered the field of liquor control after a long period in which prohibition was the policy, did contain such statement, but this was omitted from our statutes in the 1939 revision.

■■ The Commissioner does not contend to the contrary, but he points out that one object of the title is to prevent the refilling of whiskey bottles and asserts that the challenged regulation will aid in the attainment of such legislative objective. For

the purpose of this case we may accept the latter and consider SDC 5.0221 as announcing a clearly declared legislative policy. However, we are unable to find where the legislature has laid down any standards to guide the Commissioner's action. Its requirement that his enactments may not be "inconsistent with this title or with federal laws or regulations" is insufficient for this purpose. Consequently, the regulation involved is invalid.

█ To accept his contention would be to recognize in him authority, without limitation, to do whatever he determined should be done to facilitate the enforcement of this or any other criminal statute in our liquor control law. Such a delegation is beyond the competence of the legislature. In 1 Am.Jur.2d., Administrative Law, § 108, the rule is stated thus: "A statute or ordinance which in effect reposes an absolute, unregulated, and undefined discretion in an administrative agency bestows arbitrary powers and is an unlawful delegation of legislative powers. The presumption that an officer will not act arbitrarily but will exercise sound judgment and good faith cannot sustain a delegation of unregulated discretion." See also 73 C.J.S. Public Administrative Bodies and Procedure, § 32.

In support of the court's order the Commissioner has urged on us the reasoning in Blackman v. Board of Liquor Control, 95 Ohio App. 177, 113 N.E.2d 893. There the legislature had conferred upon the Board the authority to fix minimum prices for wine without laying down a standard. The court held that since the sale of wine was a mere privilege the usual requirement of a standard did not apply. We do not share that view. Prof. Davis in his Administrative Law Treatise, Vol. 1, § 2.11 at page 130, makes this comment on that holding: "The notion that when vital business interests are at stake, the label of 'privilege' is enough to justify arbitrariness or injustice is quite unfortunate. Argument should be unnecessary to support the simple proposition that arbitrariness and injustice have no place in any governmental system."

We are not unmindful of the fact that compliance by the licensees with the law in the conduct of their business is vital to the successful operation of any liquor control system. Also we realize that the Commissioner is in a superior position to

promote such compliance. But our legislature has not given him authority to secure their compliance by rule or regulation. Rather, in SDC 5.0104 it gave him duties in this regard and established detailed procedures by which he could promote such compliance through proceedings seeking revocation or suspension of their licenses.

An examination of our law concerning alcoholic beverages leaves the definite impression that the legislature regarded the area subject to the rule-making power of the Commissioner as of incidental importance. Its own enactments seem to cover the field rather extensively and in most instances in minute detail.

Reversed.

All the Judges concur.