In the Matter of the Application of NORTHWESTERN BELL TELEPHONE COMPANY For an Increase in Intrastate Rates.

No. 13624.

Supreme Court of South Dakota.

Argued May 20, 1982.

Decided Nov. 10, 1982.

their official concern, when he knows that such information is false; is guilty of false reporting to authorities. . . .

Judith A. Atkinson, Asst. Atty. Gen., Pierre, for appellant State; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Walter Washington, Asst. Atty. Gen., Pierre, for appellee South Dakota Public Utilities Com'n.

John L. Morgan of Morgan, Fuller, Theeler & Cogley, Mitchell, for appellee Northwestern Bell Tel. Co.; James S. Nelson of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, William K. Schaphorst and Melvin R. Quinlan, Omaha, Neb., on brief.

HURD, Circuit Judge.

This is an appeal by the State from an order of the circuit court affirming a decision of appellee South Dakota Public Utilities Commission (PUC) denying appellee Northwestern Bell Telephone Company's (Bell) motion for immediate rate relief. We dismiss the appeal as moot.

On January 30, 1981, Bell filed an application with the PUC for authority to increase its intrastate rates. Simultaneous with said general rate application, Bell filed a motion for immediate rate relief. On June 2, 1981, the PUC allowed the State to intervene. On July 7, 1981, the PUC held an interim hearing on Bell's motion for immediate rate relief. On July 28, 1981, the PUC entered its order denying the motion for the reason that Bell had failed to make a sufficient showing of financial emergency to justify granting its request for immediate rate relief. Both Bell and the State appealed to the circuit court. On

November 2, 1981, the circuit court affirmed the action of the PUC. On February 2, 1982, the PUC entered its decision and order disposing of all issues in Bell's application.

The State argues, in opposition to both the PUC and Bell, that the PUC does not have authority to hold hearings for, or have any jurisdiction over, any person or corporation in the matter of interim rate increases. The State argues, in opposition to the PUC, that the PUC did not have authority to apply a "financial emergency" standard to Bell's request for interim rate relief because the PUC had not previously adopted a rule defining such a "financial emergency" standard.

Bell argues, in opposition to the PUC, that the PUC does not have authority to adopt a financial emergency standard for granting interim rate relief. The PUC has filed a motion to strike this contention because it is an affirmative argument seeking reversal of the circuit court's order, and, therefore, is properly arguable only by an appellant, not an appellee.

The PUC argues, in opposition to both the State and Bell, that the instant appeal has been rendered moot by the final action of the PUC on Bell's overall application for a rate increase.

We hold:

1) That while the instant appeal has become moot so far as the instant action is concerned, this court will retain the instant case in order to pass on a question of public interest;

2) That the PUC does have authority to hold hearings for the purpose of considering and acting upon applications for interim rate changes filed by a telephone company under its jurisdiction.

3) That Bell's failure to file a notice of review precludes it from contending that the PUC does not have authority to adopt a financial emergency standard for granting interim rate relief; and

4) That the PUC did not have authority to apply a financial emergency standard to Bell's request for interim rate relief, because the PUC had not previously adopted a rule defining such a "financial emergency" standard.

■ The decision and order of the PUC entered on February 2, 1982, disposed of all issues in Bell's application, including the issues raised in Bell's motion for immediate rate relief. Thus, the appeal has become moot so far as the instant action is concerned. However, as this Court stated in *Stanley County School Dist. v. Stanley County Educ. Ass'n.* 310 N.W.2d 162, 163 (S.D.1981), quoting from 5 Am.Jur.2d *Appeal and Error* § 768 (1962):

[i]t is a well-established rule that an appellate court may retain an appeal for hearing and determination if it involves questions of public interest even though it has become moot so far as the particular action or the parties are concerned.... The decision as to whether to retain a moot case in order to pass on a question of public interest lies in the discretion of the court and generally a court will determine a moot question of public importance if it feels that the value of its determination as a precedent is sufficient to overcome the rule against considering moot questions....

■ In order for a case to meet this public interest exception three criteria must be met: (1) general public importance, (2) probable future recurrence, and (3) probable future mootness. *Stanley County School Dist. v. Stanley County Educ. Ass'n.,* supra.

The PUC contends that it has the authority to hold hearings for the purpose of considering an interim rate change for a telephone company under its jurisdiction, to consider and act upon an application for such interim rate change, and to set the standards for such interim rate change. The extent of such authority is of general public importance.

While, since July 1, 1981, the PUC must take final action within six months on an application for a rate change or such

change will go into effect, SDCL 49–31–14.-1, it is probable that interim rate changes will be requested in the future.

Moreover, it is apparent that because of the six-month maximum duration of any interim rate increase, the issues raised by this appeal could never be fully litigated without becoming moot.

Accordingly, we retain the case in order to pass on the extent of the PUC's authority in regard to interim rate changes.

SDCL ch. 49–31 deals specifically with telephone and telegraph service. With respect to the PUC's rate-making powers, SDCL 49–31–4 provides:

> The public utilities commission shall have power to fix individual rates as well as to make schedules of maximum rates, including joint rates to be charged by any telegraph or telephone company or companies for the rent of any line or instrument or for the transmission of any message and for any service in connection therewith, and *to make such changes therein from time to time as it may deem reasonable or necessary,* and it may exercise any other power necessary to a proper supervision and control of such companies (emphasis added).

SDCL 49–31–5 provides:

> The public utilities commission shall have authority to regulate the method and manner of conducting the business of transmitting messages by telegraph or telephone and to make, fix, and determine all necessary rules and regulations for the conducting of such business, as well as to fix any and all rates and charges for the transmission of any message by telegraph or telephone or any service in connection therewith, including individual rates as well as schedules of rates, *and to change such rates from time to time when in its judgment such change is necessary* (emphasis added).

SDCL 49–31–2 declares telephone companies to be common carriers, and provides that all laws regulating common carriers shall apply with equal force and effect to telephone companies. With respect to the PUC's rate-making powers, SDCL 49–10–1 provides:

The public utilities commission is authorized and directed to make for each of the common carriers doing business in this state a schedule of reasonable maximum fares and rates of charges for the transportation or transmission of messages by telegraph or telephone, on or over each of such common carriers, and authority to make schedules shall include the power of classification of all such messages by telegraph or telephone, and it shall be the duty of such commission to make such classification. Such commission shall have authority to fix different rates or schedules of rates for different common carriers and for different lines and different parts of the same line of any common carrier.

> *Such commission shall from time to time and as often as circumstances may require, change and revise such schedules* (emphasis added).

SDCL 49–31–4, 49–31–5 and 49–10–1 give the PUC the authority to make rate changes from time to time. Since these statutes do not restrict such authority to "general" rate changes, a common-sense interpretation of such language would lead to the conclusion that the PUC has authority to make interim rate changes, especially in light of SDCL 2–14–12, which provides that state statutes "are to be liberally construed with a view to effect [their] objects and to promote justice."

Moreover, a number of jurisdictions have recognized the implied power of a state regulatory agency vested with general rate-making jurisdiction to take interim action even when no express statutory authority exists. For example, in response to a similar issue on appeal in *State ex rel. Laclede Gas Co. v. Pub. Serv. Comm'n.,* 535 S.W.2d 561, 566 (Mo.App.1976), the Missouri Court of Appeals, citing supporting cases from seven other jurisdictions, held:

> The very real necessity of recognizing such a power in the regulatory agency has long been recognized by courts throughout this country. Not a single

case has been cited by Jackson County nor found by independent research which has ever denied such a power to a regulatory agency such as the Missouri Public Service Commission. On the other hand, numerous cases from diverse jurisdictions have recognized and given effect to such an implied power even ·in the absence of specific statutory authority (citations omitted).

See also, *Colorado Mun. League v. Pub. Util. Comm'n,* 197 Colo. 106, 591 P.2d 577 (1979); *Chesapeake and Potomac Tel. Co. v. Pub. Serv. Comm'n,* 330 A.2d 236 (D.C. 1974); *Kansas-Nebraska Natural Gas Co., v. State Corp. Comm'n,* 217 Kan. 604, 538 P.2d 702 (1975); *Pub. Util. Comm'n v. City of Corpus Christi,* 555 S.W.2d 509 (Tex.Civ. App.1977).

■ We conclude, therefore, on the basis of the foregoing statutes and decisions, that the PUC does have authority to hold hearings for the purpose of considering and acting upon applications for interim rate changes filed by a telephone company under its jurisdiction.

■ While Bell argued before the circuit court that the PUC does not have authority to adopt a financial emergency standard for granting interim rate relief, it has not complied with the notice of review requirements contained in SDCL 15–26A–22. See *Gridley v. Engelhart,* 322 N.W.2d 3 (S.D. 1982). Accordingly, this court will not consider Bell's contention that the PUC does not have authority to adopt a financial emergency standard for granting interim rate relief.

Assuming, without deciding, that the PUC does have authority to adopt a financial emergency standard for granting interim rate relief, the issue remains as to whether they had authority to apply such a standard in the instant case since they had not previously adopted a rule defining a "financial emergency" standard.

Under the statutes of South Dakota, there is an expressed legislative will that the PUC set rates which are "just and reasonable." See SDCL 49–8–3, 49–10–1, 49–10–27, 49–10–34, 49–31–4, 49–31–5.

In the instant case, the PUC, at the adjudication hearing, for the first time, applied a financial emergency standard to bar consideration of the question of the reasonableness of interim rates. SDCL ch. 1–26 requires notice and hearing before the adoption of rules of general applicability that implement, interpret, or prescribe law, policy, procedure, or practice requirements of an administrative agency. Moreover, traditional concepts of due process require that fair notice of rules and standards be given to the parties prior to an adjudication hearing.

■ Of course, administrative agencies must have the power to deal with unforeseen, specialized, and varying problems which may arise on a case-to-case basis. See *N.L.R.B. v. Bell Aerospace Co.* 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974); *S.E.C. v. Chenery Corp.,* 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). However, the need for rules and standards governing the granting of interim rate relief is foreseeable, and the problem of establishing a rule defining financial emergency is not so specialized or varied in nature as to be impossible to be contained within the boundaries of a general rule.

■ Thus, the PUC was not justified in failing to follow the statutory requirements of hearing and notice in conjunction with the development of a financial emergency standard and the failure to do so in the instant case violates the traditional due process concept of fair notice. Therefore, we conclude that the PUC did not have authority to apply a financial emergency standard in the instant case because it had not previously adopted a rule defining such standard.

The appeal from the trial court's order affirming the order of the South Dakota Public Utilities Commission is dismissed.

FOSHEIM, C.J., and WOLLMAN and DUNN, JJ., concur.

HENDERSON, J., concurs in part, and dissents in part.

HURD, Circuit Judge, for MORGAN, J., disqualified.

HENDERSON, Justice (concurring in part, dissenting in part).

I concur with the dismissal of this appeal. However, I dissent with that aspect of the majority opinion which, by language, permits the Public Utilities Commission to act on interim rate requests or to grant interim rate orders.

From a standpoint of the public's best interests, this case is highly unusual: one Assistant Attorney General, advocating on behalf of the people's interests, and who represents the Public Utilities Commission of this state, insists that the Public Utilities Commission has an implied power under present statutes to grant interim rate requests; whereas, another Assistant Attorney General, also commissioned to protect the public, and acting on behalf of the sovereign, strenuously urges that no such power exists.

The Public Utilities Commission of this state is subject to the Administrative Procedures Act of this state. As a commission acting as an agency, it is given limited powers in a specialized field of administrative law and can only exercise those specific powers which the legislature has bestowed upon it. This is settled law in our state. *Affiliated Distillers Brands Corp. v. Gillis,* 81 S.D. 44, 130 N.W.2d 597 (1964).

There can be no question about this: the Public Utilities Commission has never adopted a rule upon which to base its supposed authority to act on interim rate requests (substantive) or a rule(s) with respect to its promulgation of assumed power (procedural). In short, the Public Utilities Commission has never adopted any standards on holding interim rate hearings or granting interim rate increases.

Our legislature, via SDCL 49–31–2, has declared all telephone companies to be common carriers. Therefore, the applicable law to common carriers likewise applies to telephone companies. Although the Public Utilities Commission has general powers under ch. 49–31 to regulate the method and manner of the general telephone business and to fix rates and charges for services offered, the state legislature has never enacted a state law expressly permitting the Public Utilities Commission to either (a) act on interim rate requests or (b) grant interim orders. We need not, or should not, apply Federal law, Federal decisions or sister states' decisions to decide this case and particularly on the point that I address in my dissenting view. It can be aptly treated with South Dakota decisions. In *Oahe Conservancy Subdistrict v. Janklow,* 308 N.W.2d 559, 563 (S.D.1981), this Court stated:

> Equally as fundamental and settled is the principle that having written broad policy into law the Legislature, in the execution of that policy, can delegate quasi-legislative power or functions to executive or administrative officers or agencies, *provided it adopts understandable standards to guide its delegate in the exercise of such powers.* (Emphasis mine.)

And it is obvious that the Public Utilities Commission adopted no understandable standards. Moreover, in another recent case, *S.D. Migratory Bird Ass'n v. S.D. Game, Etc.,* 312 N.W.2d 374, 375 (S.D.1981), this very Court decided that, to establish a proper delegation of authority from the legislature to an agency, there must have been "2. A sufficient guide or standard to guide the agency." Thus, the state legislature never having given any authority to the Public Utilities Commission to hold interim rate hearings or having set forth a statutory guide or standard to aid the agency in holding a hearing, the Public Utilities Commission's position that it has implied power to establish interim rates crumbles.

Our legislature has addressed, in the past, specifically the powers of the Public Utilities Commission with respect to the time within which the Public Utilities Commission must conclude its decision and final action. Since July 1, 1981, any final action of the Public Utilities Commission must be concluded in its entirety within six months. The legislature has also provided a set of timetables for the Public Utilities Commission to follow after a request has been submitted for an increase in rates. This timetable for a change in rates by telephone

companies corresponds to the schedule that the legislature has established for a rate change with public utilities in this state. Under no statutory scheme with respect to time and setting rate changes, has interim rate increases been addressed by the legislature. Under SDCL 49–10–27, the Public Utilities Commission is required to give preference to hearings for common carriers. Originally adopted in 1911, this section of the Code was reenacted in 1980 and provides the regulatory time scheme provided for by the state legislature to provide rate relief for a common carrier such as a telephone company. Therefore, our state legislature has obviously been attuned to time and rates. The timetables which have been established by the legislature should be followed. In the case of telephone companies, our legislature has seen fit to create specific time limits and given them a preference in seeing that their cause is heard (on their principal claim for relief). But it does not logically flow that it has thus created a right for an interim procedure, for an interim hearing and interim rate relief. It is not the function of the Public Utilities Commission or the Supreme Court to provide law where it does not exist. Our legislature will convene in approximately two months and can address this question. Article III, § 7 of the South Dakota Constitution provides for the convening of annual sessions of our state legislature, and one of the specific purposes for the amendment to our state constitution providing for annual sessions was for the legislature to timely address matters of great public importance.

My point is this: as one reviews the statutes it becomes obvious that the legislature has not only established certain basic time limits but has also provided a set of timetables for the Public Utilities Commission to follow after a request for an increase in rates has been filed with them. If the legislature had seen fit to give authority to the Public Utilities Commission for interim rate increases, it could have done so. But it did not.

I fear the precedent established by this case for it establishes an opportunity for the public utilities and common carriers of this state to continually bombard the Public Utilities Commission with requests for temporary, emergency, or interim rate increases. History will wash away my writing but the impact of this decision and the hurt to the people of this state is great and shall linger for years to come as this multimillion dollar judicial grant is levied in the future.* And by a series of temporary or interim or so-called emergency rate increases, higher and higher rates can be obtained without ever, head on, having been granted a rate increase on the principal and basic application for an increase. This decision perpetuates a state of rate flux, confusion and overlap. We need the legislature to forthwith address this question of great public importance for the taxpayers of this state and not have it decided by an agency of government or the judicial branch. The majority decision, in my opinion, as regards the one legal point that I dissent on, is violative of Article II of the South Dakota Constitution which provides: "The powers of the government of the state are divided into three distinct departments, the legislative, executive and judicial; and the powers and duties of each are prescribed by this Constitution." There is nothing so dangerous to constitutional government as an undefined discretion in an administrative agency under an implication of power given by a judicial grant.

---

* Per Bureau of Labor Statistics, U.S. Department of Labor, South Dakota ranked 50th in 1975, 1976, 1977, and 1978 in average weekly wage; South Dakota's rank was not given therein for the years 1979, 1980, and 1981; per capita income in 1981 for South Dakota was $8,793 per U.S. Department of Commerce Bureau of Economic Analysis; per October 8, 1982, U.S. Department of Commerce, Bureau of the Census, four counties in South Dakota were ranked in the lowest fifteen counties in the United States of America in per capita income.