Barbara **GRATZFELD**, Plaintiff and Appellant,

v.

**BOMGAARS SUPPLY**, Defendant and Appellee.

No. 14918.

Supreme Court of South Dakota.

Considered on Briefs Oct. 24, 1985.

Decided July 24, 1986.

---

Bill Froke of East River Legal Services Corp., Sioux Falls, for plaintiff and appellant.

Craig A. Kennedy of Doyle & Kennedy, Yankton, for defendant and appellee.

MORGAN, Justice (on reassignment).

Appellant Barbara Gratzfeld (Gratzfeld) appeals from a circuit court judgment which affirmed the denial of unemployment compensation benefits by the Secretary of Labor. We reverse.

Gratzfeld was employed as a cashier for Bomgaars Supply (Bomgaars) in Yankton, South Dakota. Bomgaars had an unwritten policy which allowed employees to charge items for a short period of time. There was an unwritten procedure that was to be followed for each charge, but Gratzfeld failed to follow that procedure. Her termination did not stem from her failure to follow the procedure, but, rather, because she did not repay her charges within the time requested.

On February 17, 1984, a Bomgaars assistant manager discovered five charge slips that were not properly filled out according to the unwritten charging procedure. The assistant manager informed all store employees that all items on those charge slips were to be paid by closing time, 8:00 p.m., that evening. Gratzfeld arrived at work at approximately 12:00 noon that same day and was also informed of the assistant manager's statement. The five charge slips totaled $113.25.

At the close of the day, Gratzfeld paid $100.00 in cash on these charge slips. On her way out, she also mentioned to the assistant manager that she did not have the money to fully pay for the charge slips but would return the next day to do so. Apparently the assistant manager, who was busy, did not hear her.

Gratzfeld failed to return the next day to remit the $13.25 still owing on the charge slips. In the intervening time, the weather had turned and she was unable to reach Yankton from her rural home. Gratzfeld failed to make arrangements for paying the remaining charges during the next two days. Gratzfeld's next scheduled work day was February 21, 1984. Gratzfeld began working at 8:00 a.m. but did not contact anyone in the store management about paying the remaining $13.25. At approximately 10:00 a.m., the Bomgaars manager called Gratzfeld into his office and discharged her for failing to pay for the merchandise as directed on February 17, 1984. Gratzfeld then left the store only to return

a short time later to pay the remainder owed on the charge slips.

Gratzfeld applied for unemployment insurance benefits and was originally awarded those benefits. Bomgaars appealed and the appeals referee reversed, holding that Gratzfeld was ineligible for benefits since she failed to pay for the charged merchandise as ordered. This failure, in his judgment, constituted work-connected misconduct. This determination was upheld on appeals by Gratzfeld to the Secretary of Labor and to the circuit court.

■ Bomgaars initially asserts that this court lacks jurisdiction to hear this appeal. Although Bomgaars argued the jurisdiction issue before the circuit court,* it has not complied with the notice of review requirements contained within SDCL 15–26A–22. As a result, Bomgaars has waived this nonfatal jurisdiction issue and this court will not consider it. *See State v. Holland*, 346 N.W.2d 302, 306 (S.D.1984); *Application of Northwestern Bell Tel. Co.*, 326 N.W.2d 100, 104 (S.D.1982); *Gridley v. Engelhart*, 322 N.W.2d 3, 5–6 (S.D.1982).

The only perfected issue on appeal is: Whether Gratzfeld's actions constituted misconduct disqualifying her from unemployment benefits?

■ The decision of an administrative agency will be upheld on appeal unless its decision is clearly erroneous in light of the entire record. SDCL 1–26–36(5). Stated another way, the decision must be upheld unless we are left with a definite and firm conviction that a mistake has been made. *See Dakota Harvestore Systems, Inc. v. South Dakota Dep't. of Revenue*, 331 N.W.2d 828, 830 (S.D.1983); *Fraser v. Water Rights Commission*, 294 N.W.2d 784, 788 (S.D.1980). Although the appeals referee and the circuit court cited the correct authority to define misconduct, *Matter of Yaroch*, 333 N.W.2d 448 (S.D.1983), we hold that they clearly erred in concluding

that misconduct was established by the evidence in this case.

It is clear from a review of the unemployment compensation hearing before the appeals referee that Gratzfeld was fired because she could not pay the $13.25 balance still owing on her charge slips. The appeals referee specifically asked: "Had the claimant paid for the merchandise as you had requested, by 8:00 [p.m.] on the 17th of February, would you have allowed her to continue in the employment?" The store manager replied: "Yes sir. It would have been no problem." Gratzfeld paid $100.00 of the outstanding $113.25 balance prior to leaving on February 17, 1984.

■ In *Yaroch*, the employee disregarded a series of at least six "'harsh … full-force commands … to pick up the work.'" 333 N.W.2d at 450. In another recent case involving unemployment compensation, *Matter of Lorraine Johnson*, 338 N.W.2d 453 (S.D.1983), the employee refused to undertake a work task assigned through a rotation system. We do not find Gratzfeld's conduct demonstrated the willful and wanton disregard of an employer's interest as set forth in *Yaroch* and evidenced in *Johnson*. Her conduct was an isolated incident, not related in any way to her job performance. It must also be noted that unemployment compensation statutes should be liberally construed in favor of the claimant. *See Red Bird v. Meierhenry*, 314 N.W.2d 95, 96 (S.D.1982). Gratzfeld complied as best she could to the instructions of her employer that she pay the entire $113.25 then owing by closing time on February 17, 1984. It should also be noted that although Gratzfeld failed to make arrangements for the payment of the $13.25 in the intervening three days, she did pay the remaining balance on February 21, 1984, which was her next regularly scheduled day of work.

Accordingly, the judgment of the trial court is reversed.

---

* Bomgaars asserted lack of jurisdiction because Gratzfeld did not timely appeal the Secretary of Labor's decision.

FOSHEIM, C.J., and HERTZ, Circuit Judge, acting as a Supreme Court Justice, concur.

HENDERSON and WUEST, JJ., concur in part and dissent in part.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

HENDERSON, Justice (concurring in part, dissenting in part).

I concur in that portion of the majority opinion which concludes that Bomgaars Supply (Bomgaars) has waived its nonfatal jurisdiction contention by failing to comply with the notice of review requirements of SDCL 15–26A–22. From the remainder of the majority opinion, however, I dissent.

As the majority opinion notes, an unwritten policy existed which allowed Bomgaars' employees to charge items for a short period of time. As the majority opinion fails to note, however, when items were removed from the store without being paid for, another store clerk was to prepare a charge slip for that merchandise and the charge slip was to be approved and initialed by the manager on duty. These charge slips were kept in an office and were supposed to indicate the items purchased and the employee purchasing them. This policy and these procedures were discussed in meetings and Barbara Gratzfeld (Claimant) was aware of the policy and the charging procedures. Claimant, however, took merchandise from the store without paying and without following her employer's procedures.

On February 17, 1984, five charge slips were discovered *underneath the cash drawer of a cash register.* This was not the proper place for such charge slips.[1] Two of the charge slips had "Barb" written on the top, but *the remainder did not indicate which employee had made the charge.* The *charge slips were not dated, several did not indicate the items charged*

and *none of the charge slips had been initialed by a manager.* The assistant manager who made the discovery announced to all store employees that all items on these charge slips were to be paid by closing time. When Claimant arrived for work at noon, the assistant manager informed her that if these charge slips were hers, she was to pay for them by closing time.

Claimant worked the rest of the day and knew throughout that she did not have sufficient funds to pay the charges, but she made no attempt to make arrangements to pay for the charged items in the future. Prior to leaving at closing time, Claimant did pay $100.00 on the charge slips. On her way out, she also mentioned to the assistant manager that she did not have the money to fully pay for the charge slips but would be in the next day to do so. The assistant manager, who was busy, did not hear Claimant.

Claimant, however, did not go to the store the next day—she was not scheduled to work and a blizzard kept her at home. Claimant did not call the store and attempt to make arrangements for paying the charges and she did not have her husband, who had gone into town, pay the charges for her. Neither did Claimant go to the store the following two days nor did she call the manager and make arrangements for paying the charges and she offered no good excuse for failing to do so. On February 21, 1984, Claimant's next regularly scheduled work day, Claimant went to work at 8:00 a.m. Between 8:00 and 10:00 a.m., Claimant failed to contact anyone in management about paying the charges or making arrangements for the same, even though she had money to pay the remaining charges.[2] At 10:00 a.m., Bomgaars' manager arrived at the store after attending a meeting. The manager called Claimant into his office and discharged her from Bomgaars' employ for failing to follow proper store procedure in charging mer-

---

1. Claimant was a cashier. She had control over the cash register.

2. Claimant was not acting in accordance with the "duties and obligations to [her] employer", contrary to SDCL 61–6–14.1(2).

chandise in the first instance and for failing to pay for the merchandise as directed on February 17, 1984.[3] After being discharged, Claimant left the store for a short time and then returned and paid the remainder owed on the charge slips.

Under SDCL 61-6-14, an unemployed person is not entitled to unemployment insurance benefits if they were discharged for work-connected misconduct. *Matter of White,* 339 N.W.2d 306, 307 (S.D.1983). At the time of Claimant's discharge on February 21, 1984, this Court had defined misconduct as follows:

> [M]isconduct [within the meaning of the unemployment compensation statutes] is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, *or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.* On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute. (Emphasis supplied mine.)

*Matter of Yaroch,* 333 N.W.2d 448, 449 (S.D.1983) (citation omitted; brackets in original). In 1984, the South Dakota Legislature essentially codified this definition of misconduct. *See* SDCL 61-6-14.1.

In appeals such as the case at bar, "our review is of the decision of the administrative agency and our standard is the clearly erroneous standard." *Kienast v. Sioux Valley Co-op,* 371 N.W.2d 337, 339 (S.D. 1985). We review the administrative agency decision essentially in the same manner as did the circuit court, *Matter of South*

*Dakota Water Management Bd.,* 351 N.W.2d 119, 122 (S.D.1984), and we will reverse that agency decision if, inter alia, it prejudices substantial rights because it violates statutory provisions or is affected by an error of law. *See* SDCL 1-26-36.

This Court, in *Yaroch,* 333 N.W.2d 448, held an employee's failure to comply with his employer's order to speed up the work constituted disqualifying misconduct. In *Matter of Lorraine Johnson,* 338 N.W.2d 453 (S.D.1983), we held an employee's isolated refusal to undertake a work task assigned to her that day, constituted misconduct which disqualified her from receiving unemployment benefits. In *Kienast,* 371 N.W.2d 337, we held that an employee's failure to train a fellow employee, after being instructed to do so, constituted work-connected misconduct.

In the present case, Bomgaars discovered five employee charge slips, totaling over $100.00, that were not properly completed and not in their proper place. Claimant, like all other employees, was informed that these slips had to be paid by the end of the day. Claimant, however, did not arrange to pay the charge slips and did not pay in full, despite having the entire day to make such arrangements and/or procure the necessary funds. Nor did Claimant contact or make arrangements with Bomgaars during the next three days and she offered no good excuse for failing to do so. Claimant had ample opportunity to pay for the charge slips or make arrangements for their payment. This she failed to do. The charge slips in question were not properly completed, not properly acknowledged, and not in their proper place and Claimant was directed to pay for the same by closing time. Claimant thereafter failed to comply with her employer's directive. It is obvious Claimant failed to abide by Bomgaars' charging policy. Claimant knew the charging policy. The transcript from the appeals referee hearing substantiates this and the appeals referee found it as a fact. The circuit court adopted the findings of the

---

**3.** *See* Appeals Referee's Findings of Fact, Settled Record at page 15.

appeals referee, as did the Secretary of Labor. It is obvious that Claimant knew she had the right to charge and had to use charge slips. However, Claimant failed to abide by the store policy which clearly affixed the responsibility of paying for the merchandise unto herself. Certainly, not dating the charge slips and not indicating her name thereon was wrong. Some of the charge slips had sales tags stuck to them as the only indication of the item that had been charged. None of the charge slips had been approved by management personnel. When an assistant manager discovered these unbusinesslike charge slips, tucked away out of sight, he was noticeably upset which prompted the general announcement that the charge slips were to be paid by 8:00 p.m. that evening. Claimant, however, failed to comply with her employer's directive. All of this comprised an intentional and substantial disregard of the employer's interests and the employee's duties and obligations to her employer. The appeals referee made such findings and conclusions and after a review of the record, I am not convinced that such findings and conclusions are clearly erroneous. Pared to the bone, this is a factual appeal. Under these facts, Claimant is not entitled to unemployment compensation insurance benefits as she was discharged for work-connected misconduct. *White*, 339 N.W.2d at 307. I would therefore affirm the circuit court judgment which affirmed the Secretary of Labor.

I am hereby authorized to state that Justice WUEST joins in this concurrence in part and dissent in part.