James A. DEUCHAR, Plaintiff and Appellant,

v.

FOLAND RANCH, INC., Defendant and Appellee,

and

Robert ANDERSON, Defendant and Third-Party Plaintiff,

v.

Gene DEUCHAR and Dennis Miller, Third-Party Defendants.

No. 15474.

Supreme Court of South Dakota.

Argued March 24, 1987.

Decided July 29, 1987.

Thomas C. Barnett, Jr. of Kemnitz & Barnett, Philip, for plaintiff and appellant.

G. Verne Goodsell of Gunderson, Palmer & Goodsell, for defendant and appellee; Daniel E. Ashmore of Gunderson, Palmer & Goodsell, Rapid City, on the brief.

HENDERSON, Justice.

## PROCEDURAL HISTORY

This is a civil appeal taken from a summary judgment granted in Haakon County. James A. Deuchar, plaintiff, instituted a suit alleging negligence on the part of Robert Anderson, Gene Deuchar, and Foland Ranch, Inc., defendants. Defendant Foland Ranch was granted summary judgment upon the basis that Anderson, who mistook plaintiff for a wounded deer and shot him, was not acting within the scope of his employment when he injured plaintiff. At issue, are the questions: Under the facts before us, did the trial court err in granting summary judgment? More specifically, may Foland Ranch be held liable for the action of its employee, Robert Anderson, under the doctrine of *respondeat superior?* Given the scenario of facts, which we detail below, we hold that summary judgment was improper and, accordingly, reverse and remand.

## FACTS

We now develop the facts. A hunting party consisting of plaintiff, his brother Gene Deuchar, and two other individuals arrived at Foland Ranch on November 23, 1983, to go deer hunting. When the hunting party arrived, Robert Anderson, an employee of Foland Ranch, was caking and moving pipes so that cattle could be watered. During the time that Anderson did his chores, the hunting party accompanied him and conversed with him. When Anderson finished his chores, he parked his ranch vehicle, picked up his rifle, and joined

the hunting party. A fair reading of the depositions below permits the conclusion that this hunting party knew there was a "no hunting" rule on the Foland Ranch and they had been denied permission to hunt on the ranch several times.[1] Foland Ranch further had a policy that there could be no hunting on the ranch unless permission was secured from Vern Foland, the owner of the ranch. From time to time, permission was secured to hunt by divers persons and an admonition was given that all vehicles were to stay on established paths and remain away from livestock. Obviously, Foland did not want the livestock shot by hunters. Furthermore, Foland testified below that hunters could not hunt on the ranch unless accompanied by corporate employees. Apparently, Anderson was one of these corporate employees and had acted as a guide for outside hunters and to enforce his employer's rules concerning any hunt on the ranch. A personal note: Anderson is the stepson of Vern Foland, president of Foland Ranch, Inc. Anderson also happens to be married to plaintiff's sister. On the date of this hunt and accident, Anderson had not sought the permission of Vern Foland to allow this particular hunt. At least one deposition suggests that this was not an unusual situation. Plaintiff, however, was unaware that Foland's permission had not been obtained by Anderson.

So far as this particular hunt was concerned, it seems to be uncontroverted that Foland did not give this hunting party permission to hunt on the ranch and did not authorize Anderson to guide the party. It also appears to be uncontroverted that Anderson did supervise the hunting party on the date in question and acted as its guide.

Anderson had filled his deer tag several days prior to the date of accident and apparently was not trying to get his own deer. At one time, as he accompanied the hunting party, Anderson stopped and shot at a coyote. Coyotes are generally recognized as a nemesis to a ranching operation.

As the sun was setting, plaintiff shot and wounded a buck deer that was below him in a draw. Plaintiff and one Dennis Miller approached the buck and it stumbled to its feet and began to run down further into the draw. Plaintiff, Dennis Miller, and David Miller pursued the deer. Anderson and Gene Deuchar remained behind with the trucks on a ridge. Plaintiff tried to trail the deer through the snow. Shortly, Anderson and defendant Deuchar believed they spotted the wounded buck traveling near a Rural Electric Association (REA) line. Anderson then fired his weapon and the bullet hit his brother-in-law, plaintiff James Deuchar, above the knee, inflicting serious injury.

Complicating this set of facts somewhat further, the parties generally understood and agreed through the time of the depositions, that there was no business purpose behind the hunt, no money exchanged hands, and that it was strictly for recreational purposes. According to the deposition of defendant Anderson, he told the hunting party that he did not have Foland's permission to hunt on the ranch and that if they shot a deer, they should keep quiet about it. He further expressed in his deposition that Foland would not be very happy if he drove up and saw them hunting because he, Anderson, knew he was violating Foland's policy of not allowing hunters to hunt on the ranch without first obtaining Foland's approval.

## DECISION

Plaintiff stresses two main theories. First, he maintains that Anderson's actions, as a guide to the hunting party when plaintiff was injured, were triggered by a dual purpose, namely (1) for pleasure, and (2) to comply with the duties of his employment. Plaintiff urges by virtue of this dual purpose, Anderson was, at least partially, acting within the scope of his employment.

---

1. Plaintiff's deposition indeed reflected that he was refused permission to hunt on one occasion but was granted permission to bow hunt on a year preceding the injury and was also allowed to hunt with a rifle on another occasion prior to the time that he was shot. On one of these occasions, Anderson accompanied Millers and Gene Deuchar.

By virtue of this rationale, plaintiff concludes that Foland Ranch, the master, is liable for the negligent acts of its servant, Anderson. Second, plaintiff contends that genuine issues of material fact exist as to whether Anderson's acts were within the scope of his employment. Plaintiff argues that summary judgment was improperly granted. We are persuaded by plaintiff's arguments. Genuine issues of material fact exist concerning this question: Did plaintiff's injury occur while Anderson was within the scope of his employment?

It is universally recognized that a master is liable for injuries to the person or property of third persons caused by the negligence of his employee when such negligence occurs within the scope of his employment. *Gackstetter v. Dart Transit Co.*, 269 Minn. 146, 149, 130 N.W.2d 326, 328 (1964); *Alberts v. Mutual Serv. Cas. Ins. Co.*, 80 S.D. 303, 306, 123 N.W.2d 96, 98 (1963); *Antonen v. Swanson*, 74 S.D. 1, 11, 48 N.W.2d 161, 167 (1951); *Morman v. Wagner*, 63 S.D. 547, 549, 262 N.W. 78, 79 (1935); *Prosser and Keeton on the Law of Torts* § 70, at 502 (5th ed. W. Keeton 1984); H. Reuschlein & W. Gregory, *Handbook on the Law of Agency and Partnership*, § 228 (1979); Restatement (Second) of Agency § 228 (1958); 53 Am.Jur.2d *Master and Servant* § 404 (1970); 57 C.J.S. *Master and Servant* § 570d(2) (1948). The phrase "within the scope of employment" has been called vague but flexible, referring to "those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." Prosser, *supra* § 70, at 502.

■ Plainly, conduct which the master has directed the servant to accomplish is within the scope of employment, but it is not necessary that conduct be specifically authorized by the master. " 'It is enough that it is impliedly directed or authorized by the master, or is of the same general nature as that authorized, or is incidental to the conduct authorized.' " *Alberts*, 80 S.D. at 306, 123 N.W.2d at 98 (quoting 57 C.J.S., *supra*, at § 570d(2)).

■ To determine if a servant's act is within the scope of employment, numerous factors should be considered.[2] Generally, if an act is connected either directly or indirectly with the business of the employer (designed to benefit the employer's business), that act is conducted within the scope of employment. *Morman*, 63 S.D. at 550, 262 N.W. at 79; Prosser, *supra* § 70, at 502. *See Gackstetter*, 269 Minn. at 150, 130 N.W.2d at 329.

Further, "[t]he fact that the servant's act is expressly forbidden by the master, or is done in a manner which he has prohibited, is to be considered in determining what the servant has been hired to do, but *it is usually not conclusive, and does not in itself prevent the act from being within the scope of employment.*" Prosser, *su-*

---

**2.** Restatement (Second) of Agency § 229 provides a comprehensive list:

(1) To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.

(2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:

(a) whether or not the act is one commonly done by such servants;

(b) the time, place and purpose of the act;

(c) the previous relations between the master and the servant;

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

(i) the extent of departure from the normal method of accomplishing an authorized result; and

(j) whether or not the act is seriously criminal.

*pra* § 70, at 502 (footnote omitted; emphasis supplied). *See* Restatement (Second) of Agency § 230; *Alberts,* 80 S.D. at 307, 123 N.W.2d at 99. An essential focus of inquiry remains: Were the servant's acts in furtherance of his employment? If the answer is yes, then employer liability may exist even if his servant's conduct was expressly forbidden by the master. *See* Prosser, *supra* § 70, at 502. *See also Gurley v. Southern Power Co.,* 172 N.C. 690, 90 S.E. 943 (1916).

■ However, an employer should not be held liable for the acts of a servant who has embarked upon a "frolic" of his own with no underlying purpose of furthering his master's business. When a servant acts with an intention to serve solely his own interests, this act is not within the scope of employment, and his master may not be held liable for it. Prosser, *supra* § 70, at 503; Restatement (Second) of Agency § 234.

Problems in predicting the outcome of a case arise when a servant acts for dual purposes, that is, to serve the master and to further personal interests. In some cases, employer liability pivots on whether the servant's acts are at least, in part, to further the master's business. *See, e.g.,* Prosser, *supra* § 70, at 503–04; Restatement (Second) of Agency § 237. Other authorities mandate that the servant's acts be "primarily for the benefit of his master" in order for employer liability to attach. *See, e.g., Gackstetter,* 269 Minn. at 150, 130 N.W.2d at 329. Yet, in other cases, employer liability depends upon establishing the foreseeability of the servant's deviation. *See, e.g.,* Prosser, *supra* § 70, at 504 (Prosser identifies this test as an emerging one).

In *Leafgreen v. American Family Mut. Ins. Co.,* 393 N.W.2d 275, 280–81 (S.D. 1986), this Court recently expressed:

We think it fairly stated that a principal is liable for tortious harm caused by an agent where a nexus sufficient to make the harm foreseeable exists between the agent's employment and the activity which actually caused the injury; foreseeable is used in the sense that the employee's conduct must not be so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business.

Therefore, this Court has adopted the foreseeability test for determining when a servant's acts are within the scope of employment.

■ Digesting the facts at hand, Anderson's employment at Foland Ranch included supervision of hunting parties.[3] Anderson admitted he was careful to guide hunters away from Foland Ranch livestock. As part of his employment, Anderson was given permission to hunt on Ranch grounds. On November 23, 1983, Anderson acted as a guide for plaintiff's hunting party and admittedly directed them away from "the vicinity of the livestock." Plaintiff's party was aware of Vern Foland's restrictive hunting policy. This party, including plaintiff, had not obtained Foland's personal permission to hunt that day. However, plaintiff's brother, Gene Deuchar, deposed that Anderson invited him to hunt on Foland Ranch "before the season was done ... maybe the last day ... if we didn't fill our tags."

Summary judgment is improperly granted if there are genuine issues of material fact and the burden is upon the movant to show that no genuine issues of material fact exist. *Wilson v. Great N. Ry.,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). *See Aase v. State,* 400 N.W.2d 269, 271 (S.D. 1987) (Henderson and Sabers, JJ., dissenting separately); *Hamaker v. Kenwel-Jackson,* 387 N.W.2d 515, 517 (S.D.1986). Issues of negligence or related matters are ordinarily not susceptible of summary adjudication. *Wilson,* 83 S.D. at 213, 157 N.W.2d at 22. This Court has specifically held that the question of whether the act of a servant was within the scope of employment must, in most cases, be a question of fact for the jury. *Lovejoy v. Campbell,* 16

**3.** While not determinative of the question at hand, the settled record contains an Affidavit in which Anderson strongly implied he was in the course of employment when Deuchar was shot.

S.D. 231, 237, 92 N.W. 24, 26 (1902). *See* Restatement (Second) of Agency § 228, comment d. Therefore, we reverse and remand to the circuit court, as summary judgment in favor of Foland Ranch was erroneously granted. Genuine issues of material fact remain as to whether Anderson was within the scope of his employment (as measured by the *Leafgreen* foreseeability test, 393 N.W.2d at 280–81) when he guided plaintiff's hunting party and fired the bullet which struck plaintiff in the leg.

Foland Ranch contends SDCL 20–9–5 [4] grants it immunity even if Anderson's act was within the scope of his employment. We observe that SDCL 20–9–5 was relied on in Foland Ranch's Motion for Summary Judgment, but the circuit court never addressed the applicability of this statute, as its decision to grant Foland Ranch's Motion for Summary Judgment was based solely upon the doctrine of *respondeat superior.* SDCL 20–9–5 was not referred to in any of the pleadings. Accordingly, since the circuit court never reached SDCL 20–9–5, we hold that it is not an issue before us on appeal. *See Sioux Valley Hosp. Ass'n v. Bryan,* 399 N.W.2d 352, 356 n. 2 (S.D. 1987); *Romey v. Landers,* 392 N.W.2d 415, 420 (S.D.1986). Plaintiff did not allege gross negligence or willful and wanton misconduct of the owner per SDCL 20–9–5 and Foland Ranch did not plead immunity as an affirmative defense under said statute.

We therefore reverse and remand based exclusively upon the circuit court's erroneous grant of Foland Ranch's Motion for Summary Judgment. We leave any consideration of SDCL 20–9–5, which is now repealed but was on the statute books at the time of this alleged cause of action, as well as the priority of issues to the sound judgment of the circuit court.

Reversed and remanded.

WUEST, C.J., and MILLER, J., concur.

SABERS, J., concurs specially.

MORGAN, J., concurs in result.

SABERS, Justice (concurring specially).

As additional factual support for this opinion, I point out that:

When Milbank Insurance brought the declaratory judgment against Foland Ranch to determine the insurer's duty to defend employee Robert Anderson, an affidavit was signed by Robert Anderson stating that one of his job requirements was to supervise outside hunters, that he had done so on numerous occasions, and that on November 23, 1983, he was *within* the scope of his employment in supervising this hunting party.

Even though Foland Ranch argues that these are "conclusory" facts, they are sufficient to raise a genuine issue of material fact for summary judgment purpose under the "dual purpose doctrine."

I agree that we should not reach the question of recreational landowner immunity because the trial court never reached it.

MORGAN, Justice (concurring in result).

I concur in the reversal on the issue of the propriety of the entry of summary judgment, but I can only concur in the result with respect to the treatment of the question of review of Foland Ranch's claim of immunity by virtue of SDCL 20–9–5.

---

**4.** SDCL 20–9–5 (repealed by 1987 S.D.Sess.L. ch. 158, § 8, effective July 1, 1987) provided:

No cause of action shall arise against the owner, tenant or lessee of any rural real estate used exclusively for agricultural purposes for any injury to any person or death resulting therefrom or damage to property of such person when such person is on the lands of such owner, tenant or lessee, for recreational purposes, with or without permission, unless there is paid to such owner, tenant or lessee a valuable consideration for such purpose, or unless such death or injuries were caused by the gross negligence or willful and wanton misconduct of such owner, tenant or lessee. Any incentive payment paid to the owner, tenant or lessee by the state or federal government for the purpose of promoting free public access for recreational purposes shall not be deemed a valuable consideration under this section.

This section shall not affect the doctrine of attractive nuisance or other legal doctrines relating to liability arising from artificial conditions highly dangerous to children.

*But see* SDCL §§ 20–9–12 through 20–9–18, inclusive.

The majority opinion notes that Foland Ranch relied on the statute in its motion for summary judgment, but the trial court granted judgment solely on the doctrine of respondeat superior. From this procedural background, the majority states: "Since the circuit court never reached SDCL 20–9–5, we hold that it is not an issue before us on appeal." In support of that statement, the opinion cites us to two cases which I find particularly inappropriate to support that contention. In *Sioux Valley Hosp. Ass'n. v. Bryan,* 399 N.W.2d 352, 356 n. 2 (S.D.1987), it was held that County's challenge to the adequacy of a filing by Hospital, not raised in the trial court but raised for the first time on appeal, would not be treated. Likewise, in *Romey v. Landers,* 392 N.W.2d 415, 420 (S.D.1986), an administrative appeal case, where Landers contended on appeal that he was denied a jury trial, we merely said that his failure to raise that issue on appeal to the circuit court precluded his raising it on appeal to this court.

The rule was perhaps best stated by Justice Porter, writing in *Estate of Assmus,* 254 N.W.2d 159, 163 n. 8 (S.D.1977), wherein it was stated:

> A review of the settled record, including the transcript of the October 10 hearing, establishes that such contention was never presented by appellants to the trial court by 'request for findings, or other apt motion, offer, objection or exception ...' SDCL 15–26–20, nor under SDCL 15–6–59(a). 'Since our function is that of review, issues not presented to the trial court are not before us on appeal.' (Citation omitted.)

Thus, it is obvious that the rule relied on by the majority is grossly inappropriate for application where the decision acknowledges that the settled record discloses that a motion advancing the statute as a basis for the summary judgment was duly presented to the trial court. There is a big difference between "the trial court not reaching an issue," and "an [appellee] not presenting an issue below."

I would arrive at the same result, however, because Foland Ranch failed to file a notice of review under the provisions of SDCL 15–26A–22, asking for review of the trial court's failure to grant summary judgment on that theory.

SDCL 15–26A–22 provides appellee with the right to obtain review of a judgment or order entered in the same action which may adversely affect him. This requirement is nothing new. In *Orr v. Kneip,* 287 N.W.2d 480, 484 (S.D.1979), we wrote: "While counsel for [appellee] assiduously made his record to preserve the issue, we must decline to address it since it has not been properly presented to us due to [appellee's] failure to cross-appeal."

In *Application of Northwestern Bell,* 326 N.W.2d 100, 104 (S.D.1982), where Bell argued before the circuit court that the PUC lacked authority to adopt a certain emergency standard, we nevertheless refused to consider that contention on appeal because Bell had failed to comply with the notice of review requirements contained in SDCL 15–26A–22. *See also Gratzfeld v. Bomgaars Supply,* 391 N.W.2d 200, 202 (S.D.1986); *Gridley v. Engelhart,* 322 N.W.2d 3, 5–6 (S.D.1982).

Obviously, where a party relies on alternative theories, and the trial court grants judgment on only one, the successful party, the appellee on appeal has the choice of only defending the trial court's decision on the one theory, or, of also pursuing the right of appeal on the other theory in the event that the trial court should be reversed on the decision he made. In this context, the trial court's failure to rule in his favor on the alternative theory is obviously adverse to him.

Also, it is a party's right to have an issue which was indeed submitted to the lower court decided by the appellate tribunal, regardless of whether or not the trial court decided it, but only if the proper procedures are followed. The filing of the notice of review puts the appellant on notice that he had better adequately brief and argue the issue raised by such notice; whereas, to permit appellees to raise issues without notice, as Foland Ranch tried to do in this case, places appellant in a quandary, does he have to meet it or not? Nor does re-

quiring the filing of a notice of review place any great burden on appellees. It only requires a little foresight and the filing of the requisite notice and docketing statement.